TICON CORPORATION, Plaintiff, *v.* EMERSON RADIO & PHONOGRAPH CORPORATION, Defendant.

Supreme Court, Special Term, New York County, November 1, 1954.

*Bernard Furman* for plaintiff.

*Lazarus Joseph* and *Eugene J. Morris* for defendant.

MATTHEW M. LEVY, J. The plaintiff's causes of action and the defendant's counterclaim involve alleged breaches of agreements between them for the manufacture of certain arming mechanisms for the use of the United States Army. The agreements were made under a prime contract let by the Army. The defendant's application in chief seeks summarily to dismiss the complaint (Rules Civ. Prac., rule 113, subd. 9) — not for claimed lack of merits per se (which are not presented one way or the other) — but upon the ground as alleged in an affirmative defense that the subject matter of the suit involves the national security, that when the contracts were made information with respect to them was classified as " confidential " by the Army, and that disclosure of certain facts (asserted to be material in the prosecution and defense of the action) would be violative of the Federal Espionage Act (U. S. Code, tit. 18, § 793, subd. d). That statute forbids anyone having any documents or data " relating to the national defense which information the possessor has reason to believe could be used to the injury of the United States or to the advantage of any foreign nation " from willfully communicating the material " to any person not entitled to receive it," and violation of the section results in criminal penalties of fine and imprisonment. The defendant argues that it " is axiomatic that a prime concern of all American citizens is to protect the

national security ", that " public policy dictates the national security to be paramount to the individual's convenience ", that the espionage law " expresses a public policy which must override the rights of private litigants ", and that the " secrecy which such contracts impose precludes an action for their enforcement ".

That the courts are in duty bound to protect our national security to the hilt goes without saying — and, indeed, this cannot be emphasized too strongly. But, as I see it, " national security " under our Constitution and laws is based not upon military secrecy alone — which, of course, must remain inviolate — but upon the true administration of justice as well. Because, under normal circumstances in our democracy, armed attack from abroad is the more obvious peril, it is not unnatural that anxiety as to the stability of our institutions was limited generally to military defense against the armed prowess of aggressive foreign powers. We had become oblivious to the possible destruction or subtle disintegration of our way of life in other ways; we had become accustomed to thinking that our democratic society is eternally impregnable against danger from within. Fortunately, we have become wiser in recent years and have come to recognize the peril to our form of government of subversive groups in our own midst. And now (without minimizing one whit the desired and needed protection from our enemies, foreign and domestic), the time has come, in my view, when we should not ignore within ourselves a seemingly growing concept strikingly antagonistic to our constitutional integrity, not so obvious perhaps but nonetheless insidious — and that is the notion that it is not within the realm of " public policy " to be interested in the full protection of individual rights and personal liberties under law. For myself, I conceive that the necessary function of — and, indeed, the *raison d'être* for — our courts is the true administration of justice between government and person, and between man and man, at least until there is likely danger to our national defense if the search for and the rendition of such justice were persisted in. Therefore, while I do not agree with the generality of Professor Wigmore's exclamatory protest in another but related connection — " As if the denial of justice to a single suitor were not as much a public injury as is the disclosure of any official record! ", I think, conversely, that it is equally wrong to proceed as the defendant here asserts — " As if the public interest were not involved in the administration of justice! " (8 Wigmore on Evidence [3d ed.], § 2378a, p. 790).

Because the subject matter of the contracts between the present parties is pregnant with the public interest in our national military security, the defendant contends that this action must now be dismissed — irrespective of the merits of the controversy, or the good faith of the respective parties, or whether the plaintiff were to be thereby inequitably rendered bankrupt, or of other factors. The principle of law which the defendant urges me to expound would, I think, lead to manifest injustice, and on occasion might even conceivably result in substantial danger to military security itself. Let me be hypothetic, but explicit. Recognizing that not often in a profit-motive economy such as ours will a businessman willingly submit to financial loss if means of protection or avoidance are lawfully at hand — are we certain that every defense contractor will fully perform, once he comes to realize not alone that hoped for gains are not to be realized, but a substantial deficit will thereby result, particularly when he is told that even deliberate default would not render him liable in damages? How can the Army rely for armaments upon the presently established system of private contracting and subcontracting if because of security reasons one may with complete immunity ignore his contractual obligations? Suppose that the plaintiff's manufacturing know-how were of substantial importance to our military security — should not the plaintiff, and thus our Government, be protected from having his economic substance scattered to the winds by a deliberate breach on the defendant's part, which breach according to the defendant's standards cannot be brought to book?

Other inquiries in support of the proper protection of our defense needs might, with logic and justice, be catalogued. Suffice it to say that it is quite clear to me that one who has willfully breached his agreement (as the plaintiff has alleged the defendant did in this case) should not under our law be entitled — without more — to blanket immunity *in limine* from the payment of just damages for that breach. If it be said that plaintiff might sue anew later, when the mantle of secrecy has been removed by due declassification, what would happen if, after the entry of a judgment of dismissal and after the plaintiff had succeeded in weathering possible financial storms, he did institute a new action — but necessarily not until after the running of the Statute of Limitations? I see nothing in the Civil Practice Act to warrant even the fleeting thought that the time within which an action must be instituted would *ipso facto* be extended because secret proof were unavailable to or not usable by one side or the other (Civ. Prac. Act. art. 2'

The statute relied upon by the defendant in the case at bar (the Espionage Act) does not preclude suit; it forbids disclosure of confidential information to any person not entitled to receive it. If the Congress or the Army were of the view that the military defense of this Government necessitated the complete elimination *ab initio* of all litigation between private persons engaged on defense projects — however meritorious the claim or justified the resistance — if it were thought that public policy did not envisage the normal administration of justice as between litigants, but demanded the judicial foreclosure of the valid rights of a wronged contracting party — statute, regulation or agreement might have so provided. In the instant case there appears to be no exculpatory clause in the prime or subcontract, no overall direction from the Congress or the Army (subject to which these ordnance orders were issued and accepted) making provision that a breach by a contracting party would not entitle the other party to institute and prosecute a suit at law in the public courts to recover proper damages for that breach — and (shall I perhaps suggest?) prescribing that any claims arising thereunder could be submitted for disposition to an appropriate official of the armed forces only. In fact, while the agreement contains a number of conditions involving " Military Security Requirements ", nothing therein contained even suggests that one of the parties may violate the agreement at will and (because of the confidential requirements of our national military security) not thereby subject himself to liability in law for damages for the breach.

I do not agree with the defendant that the present action must at this time be dismissed; and the cases, if properly understood, do not support its plea for such immediate, inexorable exemption. I shall not analyze all of the authorities upon which the defendant relies. Only one of them held that the action should be dismissed at its very outset (*Totten* v. *United States,* 92 U. S. 105). At first blush it appears to support the defendant's plea for dismissal. But a careful reading of the case readily shows its inapplicability. The action was brought to recover compensation for services claimed to have been rendered by one Lloyd (the claimant's intestate) under an alleged contract with President Lincoln, made in July, 1861, by which Lloyd was to proceed south and ascertain the number of troops stationed at different points in the Confederacy, procure plans and fortifications, and gain such other information as might be beneficial to the Government of the United States, and report the facts to the President, for which he was to be paid $200 per month. It was alleged that

Lloyd proceeded, under the contract, within the Confederate lines and remained there during the entire period of the War Between the States, collecting, and from time to time, transmitting, information to the President; and that, upon the close of the war, he was reimbursed for his expenses only, and now it is sought to recover his agreed compensation. The Supreme Court of the United States held that the petition of the claimant should be dismissed without a trial. The court said (p. 106): " The service stipulated by the contract was a secret service; the information sought was to be obtained clandestinely, and was to be communicated privately; the employment and the service were to be equally concealed. Both employer and agent must have understood that the lips of the other were to be *for ever sealed* respecting the relation of either to the matter ". (Italics supplied.) The court held that this was a contract for secret service during the war, and that (p. 107) " The secrecy which such contracts impose precludes any action for their enforcement ", since " The publicity produced by an action would itself be a breach of a contract of that kind, and thus defeat a recovery." As pointed out by Chief Justice VINSON in a recent opinion, " the very subject matter of the [Totten] action, a contract to perform espionage, was a matter of state secret ", — and " The action was dismissed on the pleadings without ever reaching the question of evidence, since it was so obvious that the action should never prevail over the privilege ", well-recognized in our law, against disclosure of state secrets (*United States* v. *Reynolds,* 345 U. S. 1, 11, n. 26). It was clear that the seal of secrecy would never be removed in the *Totten* case and that unless that were done Totten could never succeed in the action. In the case at bar, on the other hand, the data may in due time be declassified and then without question the issue may be disposed of on the merits with full disclosure of all relevant matters.

It seems to me that it should be the court's aim to invoke every proper judicial technique whereby the secret of state can remain unrevealed — without dismissing a valid suit or rejecting a valid defense, unless, of course, that be essential in the protection of the national defense. I hold that there is neither reason nor necessity for dismissal now. There will be time and logic and justice enough for that if and when it clearly appears that the national defense demands it. I conceive the problem here, therefore, to be not one of substantive law at all — compelling or justifying dismissal of the suit — but one of procedure and evidence only, subject, as usual, to the guidance and control

of the court. With this as a base for my judicial thinking, " public policy " has a clear and definitive meaning: Which ruling — in any particular case and in any given set of facts or circumstances — will facilitate the prosecution of just claims and proof of just defenses and the presentation of relevant evidence in that behalf, without compelling disclosure of military secrets and thus endangering our national security? That is, I think, the rightful and lawful criterion.

In consequence, I hold, of course, that the defendant is not entitled to a dismissal of the suit. And I hold also that the defendant is not entitled at this time to a stay of all further proceedings in the action — for which relief the defendant has alternatively applied (Civ. Prac. Act, § 167). There is no reason why the cause may not be noticed for trial and await the aging process presently indigenous to our calendar congestion. Bills of particulars may be demanded and answered. Pretrial examinations, discoveries, inspections and depositions may be had. In the event it appears in these intermediate steps that classified material may be disclosed, there is no doubt that the court can be relied upon to rule properly in the protection of the public interest. In case the cause is reached for trial, appropriate postponements may be arranged for or directed by the court. And if not, when the trial begins or during its progress permissible procedures may be invoked to keep the ship of state on an even keel from the point of view both of defense and of justice. It will be time enough to stay the action or any particular step in its prosecution (whether preliminary to the trial or the trial itself) when that step is imminent and it appears that disclosure and danger to military defense on the one hand are juxtaposed against nondisclosure and danger to the administration of justice on the other. It is for the court in the final analysis to " determine whether the circumstances are appropriate for the claim of privilege, and yet do so without forcing a disclosure of the very thing the privilege is designed to protect. * * * Where there is a strong showing of necessity [for the precise proof asserted to be confidential], the claim of privilege should not be lightly accepted, but even the most compelling necessity cannot overcome the claim of privilege if the court is ultimately satisfied that military secrets are at stake." (*United States* v. *Reynolds*, 345 U. S. 1, 8, 11, *supra*.)

" Exclusion of the evidence, though of course protecting the secret, may hamstring a plaintiff's case. Similarly, exclusion may be unfair to a defendant. To safeguard the defendant's rights, the court might dismiss the suit rather than decide on

the basis of incomplete evidence. But in situations where the excluded defense, though valid, would be insufficient to overcome the plaintiff's case, such a dismissal is unfair to the latter. There is no clear-cut way out of this dilemma.'' (Robert Haydock, Jr., of the Office of Counsel in the Office of the Secretary of Defense, Washington, D. C., '' Some Evidentiary Problems Posed by Atomic Energy Security Requirements '', 61 Harv. L. Rev., 468–469). It seems to me therefore that the court should seek to avoid reaching the issue of passing upon the claim of privilege except as a last resort. By adopting this procedure, I think that justice will be done as near as may be both to private litigants and the public welfare — without doing violence to national safety or the judicial process. In the meanwhile, it may be that the Government upon application or on its own (acting through high responsible officials having due authority — see *United States* v. *Reynolds,* 345 U. S. 1, 7–8, *supra,* and 8 Wigmore on Evidence [3d ed.], § 2379, p. 799) may remove the veil of secrecy as to certain or all relevant data (cf. American Law Institute, Model Code of Evidence [1942], rule 227). If that does not come about, the court — sworn to uphold the Constitution and the laws — can be trusted not to ignore the need for preservation of secrecy.

The defendant's motion to dismiss the action is denied, without prejudice to renewal upon the trial. The alternative application of the defendant for a stay of all proceedings is also denied, without prejudice to renewal, if, as and when there appears to be present an immediate danger of disclosure of classified data in any particular step in the litigation.