**FARNSWORTH CANNON,
INC., Appellant,**

v.

**Alton B. GRIMES, Appellee.**

**No. 79-1260.**

United States Court of Appeals,
Fourth Circuit.

Argued Nov. 9, 1979.

Decided June 12, 1980.

Opinion on Rehearing En Banc
Dec. 15, 1980.

Edmund L. Walton, Jr., McLean, Va. (Richard V. W. Adams, III, McLean, Va., on brief), for appellant.

R. John Seibert, Dept. of Justice, Washington, D. C. (Stuart E. Schiffer, Acting Asst. Atty. Gen., Washington, D. C., Justin W. Williams, U. S. Atty., Alexandria, Va., and Robert E. Kopp, Dept. of Justice, Washington, D. C., on brief), for appellee.

Before PHILLIPS and MURNAGHAN, Circuit Judges, and PERRY,* District Judge.

MURNAGHAN, Circuit Judge:

The central question presented is whether, in litigation between private parties, the successful assertion of a state secrets privilege by the United States government results not only in the exclusion of the privileged information but also in an alteration in the usual rules by which courts allocate burdens of production and persuasion and according to which they order dismissal or summary judgment. With respect to evidence which might, if available, be dispositive of this case, the Department of the Navy has invoked the privilege shielding military and state secrets.

I.

A. Farnsworth Cannon, Inc. brought an action in the Circuit Court of Fairfax County, Virginia, against Alton B. Grimes for wrongful interference with prospective contractual relations between Farnsworth Cannon and the United States Navy. Asserting that he was being sued for actions performed under color of his office as an employee of the Department of the Navy, Grimes removed the case to the United States District Court for the Eastern District of Virginia. *See* 28 U.S.C. § 1442 (1976).

Once in federal court, Grimes, who was represented by attorneys from the United

---

* The Honorable Matthew J. Perry, United States District Judge for the District of South Caro-   lina, sitting by designation.

States Department of Justice, moved to dismiss the action under Fed.R.Civ.P. 12(b)(6). He contended that proof of essential elements of the plaintiff's case and of essential elements of certain defenses would involve invasion of military and state secrets of the United States government. In support of the motion, Grimes' attorneys supplied *in camera* to the district judge a classified affidavit of the Secretary of the Navy outlining generally the secrecy areas involved and invoking a claim of military and state secret privilege with respect to the subject matter of four contracts involving Farnsworth Cannon and the Navy, with respect to the organizational structure of the Navy component for which Grimes works, and with respect to the nature and scope of Grimes' job responsibilities.[1] At the hearing on Grimes' motion to dismiss, Farnsworth Cannon filed an affidavit by its president.

By its president's affidavit, Farnsworth Cannon sufficiently established for purposes of Fed.R.Civ.P. 12(b)(6):[2]

1. Grimes was employed by the Department of the Navy in a responsible executive position.

2. On December 12, 1976, there were contractual relations between Farnsworth Cannon and the Department of the Navy consisting of three then extant agreements. Farnsworth Cannon was also a subcontractor under an agreement between the Navy and a third party. The contracts on which Farnsworth Cannon was the primary contractor had been entered with the Navy Regional Procurement Office at the Navy Supply Center in Oakland, California. The contracting officer with authority to issue, renew, or cancel the contracts[3] and his designated subordinates were all persons other than Grimes.

3. Prior to December 12, 1976, Robert F. Doss, president of Farnsworth Cannon, and Grimes were personal friends and confidants. Robert Doss' wife, Frances, was a vice president of Farnsworth Cannon, very much involved in day-to-day business operations. On or about December 4, 1976, Frances Doss informed Robert Doss that she wished a marital separation.

4. Between December 4 and December 12, 1976, Grimes gave substantial continuing counsel to Robert Doss, including advice that Robert Doss physically remove himself from the marital domicile. When the advice was taken, Grimes assisted Robert Doss in the removal of his personal effects from the marital domicile.

5. On December 12, 1976, Robert Doss discovered facts and circumstances sufficient to establish that Grimes and Frances Doss had been having and were continuing to have an affair. The fact that such matters had come to the attention of Robert Doss was also learned by Grimes on that day. Immediately, on December 12, 1976, Grimes telephoned the contracting officer at the Navy Regional Procurement Office in Oakland, California, who had supervised entry into the extant contracts between Farnsworth Cannon and the Navy. In the ensuing telephone conversation, Grimes directed that all contracts between Farnsworth Cannon and the Navy be cancelled or not renewed.

6. All contracts extant on December 12, 1976, between Farnsworth Cannon and the Navy subsequently expired in accordance with their terms. None has been renewed, and Farnsworth Cannon has been given no opportunity to bid or to make a proposal for the continuation or renewal of such contracts.[4]

---

1. The affidavit, the contents of which have not been divulged to Farnsworth Cannon or its counsel, was also made available to this court for inspection.

2. And for Fed.R.Civ.P. 56 as well. The two affidavits had been presented to the court and had not been excluded by it. Thus, pursuant to Fed.R.Civ.P. 12(b), the motion for dismissal became a motion for summary judgment, and the

order granting the dismissal constituted an order granting summary judgment.

3. *See* 32 C.F.R. § 1–402 (1979).

4. Such was the situation at the time Farnsworth Cannon submitted its affidavit and the district court considered it. In its brief, however, Farnsworth Cannon acknowledges that thereafter it was invited to submit proposals to

7. Under existing procedure, renewal of the contracts would normally have followed as a matter of course. Farnsworth Cannon has been advised by the Navy on June 29, 1978, that its work for the Navy had been satisfactory and that the Navy was sincerely interested in the continued viability of Farnsworth Cannon as a government contractor.

8. Shortly after December 12, 1976, Frances Doss left the employ of Farnsworth Cannon and became an executive with a newly formed corporation. The president of Farnsworth Cannon believed that, upon expiration of the contracts between Farnsworth Cannon and the Navy, the newly formed corporation received follow-on contracts which otherwise would have been routinely renewed and awarded to Farnsworth Cannon.

Subsequent to the filing in the district court of the affidavit of Farnsworth Cannon's president, Frances Doss married Grimes.[5]

B. Granting defendant's motion to dismiss, the district court stated, "I don't see how the plaintiff's case can possibly go forward without going into those matters covered by the military and state secrets privilege." Defendant urges affirmance on three grounds:

1. Assuming that nonsecret evidence available to plaintiff would be sufficient to enable a factfinder to decide in plaintiff's favor, the case must nevertheless be dismissed because secret information, if available, would be central to plaintiff's case.

2. Assuming again that plaintiff has sufficient nonprivileged evidence for the case to go to the factfinder, dismissal is required because secret information, if available, would be central to defendant's proof of a defense.[6]

3. The nonsecret information which plaintiff is able to introduce is not sufficient to justify a verdict in plaintiff's favor.

We reject all three contentions and reverse.

## II.

The district court's decision allowing the government's claim of privilege is not contested by plaintiff; the privileged information is, therefore, acknowledged not to be available;[7] and the only question before us is whether the existence of that privilege alters usual rules for dealing with nonadmissible material.

The settled law in this area denies such an alteration. "When the government is not a party and successfully resists disclosure sought by a party, the result is simply that the evidence is unavailable, as though

---

the Navy. Such proposals presumably relate to new arrangements, not to extension or other continuation of agreements in existence on December 12, 1976.

**5.** While the marriage of Frances Doss and Grimes was not established by affidavit, it was asserted in the brief of Farnsworth Cannon and was not contradicted in Grimes' brief.

**6.** Grimes wishes to assert immunity as a government official under *Barr v. Matteo*, 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959), and *Butz v. Economou*, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978). Alternatively, he claims that his conduct was not improper. *Cf. Zoby v. American Fidelity Co.*, 143 F.Supp. 763 (E.D.Va.1956) (holding that the financial interest of the defendant, as surety for a defaulting contractor, in having the Navy negotiate a replacement contract at the lowest feasible amount gave defendant a privilege to recommend that the Navy make its agreement with another, lower bidding contractor, rather than

with the plaintiff), *aff'd*, 242 F.2d 76 (4th Cir. 1957); Restatement (Second) of Torts §§ 767–774 (1979) (factors for determining whether interference is improper).

**7.** *Cf. United States v. Reynolds*, 345 U.S. 1, 73 S.Ct. 528, 97 L.Ed. 727 (1953) (holding military and state secrets not subject to discovery in a civil suit against the government). *But cf. Halpern v. United States*, 258 F.2d 36, 44 (2d Cir. 1958) (reversing dismissal of complaint under the Invention Secrecy Act, 35 U.S.C. §§ 181–188 (1976), directing that on remand the state secrets privilege be denied if, in the judgment of the district court, a trial *in camera* "can be carried out without substantial risk that secret information will be publicly divulged" and stating that "the privilege relating to state secrets is inapplicable when disclosure to court personnel in an *in camera* proceeding will not make the information public or endanger the national security").

a witness had died, and the case will proceed accordingly, with no consequences save those resulting from the loss of the evidence." McCormick's Handbook of the Law of Evidence § 109, at 233 (E. Cleary ed. 1972). *Accord,* 2 J. Weinstein & M. Berger, Weinstein's Evidence ¶ 509[10] at 509–65 (1979) (quoting the passage from McCormick). Judge Weinstein continues, "In such a case, sanctions against a party are inappropriate because neither party is responsible for the suppression of the evidence." The Advisory Committee's Notes to the proposed federal rule of evidence concerning the privilege for state secrets took a similar position. "If privilege is successfully claimed by the government in litigation to which it is not a party, the effect is simply to make the evidence unavailable, as though a witness had died or claimed the privilege against self–incrimination, and no specification of the consequences is necessary." Proposed Fed.R.Evid. 509(e), Advisory Committee's Note, 56 F.R.D. 183, 254 (1973).[8] *Accord,* 11 J. Moore & H. Bendix, Moore's Federal Practice at App. I–78 (2d ed. 1976).

Defendant's strongest argument is based on language from *Totten v. United States,* 92 U.S. (2 Otto) 105, 107, 23 L.Ed. 605 (1875):

It may be stated as a general principle, that public policy forbids the maintenance of any suit in a court of justice, the trial of which would inevitably lead to the disclosure of matters which the law itself regards as confidential, and respecting which it will not allow the confidence to be violated.

But the very next sentence of the opinion shows that the Court had in mind not a special rule of dismissal for state–secrets cases but rather the usual impact of the burdens of production and persuasion when potentially valuable evidence is unavailable.

On this [general] principle [stated above], suits cannot be maintained which would require a disclosure of the confidences of the confessional, or those between husband and wife, or of communications by a client to his counsel for professional advice, or of a patient to his physician for a similar purpose. Much greater reason exists for the application of the principle to cases of contract for secret services with the government, as the existence of a contract of that kind is itself a fact not to be disclosed.

Accordingly, we reject defendant's first contention and hold that, if plaintiff has sufficient admissible evidence to enable a factfinder to decide in its favor without resort to the privileged material, then the potential helpfulness to plaintiff's case of other secret, inadmissible information is not grounds for dismissal.

### III.

Defendant further urges that, when the government asserts a privilege which deprives a defendant of the evidence needed to establish a valid defense, the court should shield the defendant from the effect of the deprivation by dismissing the action. (Understandably, but inconsistently, defendant does not suggest analogous protection for plaintiffs whom an assertion of privilege may deprive of valid causes of action.)

The defendant's position is untenable. The unavailability of the evidence is a neutral consideration, and, whenever it falls upon a party, that party must accept the unhappy consequences.[9] If the assertion of

---

8. The failure of the proposed rule to gain adoption does not derogate from the authority of the Advisory Committee's observation. It was made in the course of an explanation of why, for existing common law reasons, it was not necessary for the proposed rule to cover cases between private parties where the state and military secrets privilege might be invoked: "The rule therefore deals only with the effect of a successful claim of privilege by the government in proceedings to which it is a party." 56 F.R.D. at 254.

9. Given our disposition of the case, we need not consider whether some nominally private parties might be so closely identified with the government that justice would require that courts show additional solicitude to their opponents when the government asserts a claim of privilege. *Cf.* Proposed Fed.R.Evid. 509(e), 56 F.R.D. 183, 252 (1973):

the privilege leaves plaintiff without sufficient evidence to satisfy a burden of persuasion, plaintiff will lose. *See, e. g., Halkin v. Helms*, 598 F.2d 1, 11 (D.C.Cir.1978). If plaintiff's case might be established without the privileged information, dismissal is not appropriate. *See, e. g., Clift v. United States*, 597 F.2d 826, 830 (2d Cir. 1979) (reversing dismissal where plaintiff had "not conceded that without the requested documents he would be unable to proceed, however difficult it might be to do so"). The same standards apply to defendants. *See Spock v. United States*, 464 F.Supp. 510, 519 (S.D.N.Y.1978) (ruling that the state secrets privilege applied but denying defendant's motion to dismiss the complaint, notwithstanding the government's contention that defendants could neither admit nor deny the allegations of the complaint without disclosing state secrets) ("[T]he state secrets privilege is only an evidentiary privilege . . ."); *Ticon Corp. v. Emerson Radio & Phonograph Corp.*, 206 Misc. 727, 732, 134 N.Y.S.2d 716, 721 (Sup.Ct.1954) (in a case involving alleged breaches of a "confidential" agreement between an army contractor and subcontractor, assuming that the contracts and

their subject matter were privileged but denying, without prejudice to renewal, defendant's motions to dismiss) ("I conceive the problem here, therefore, to be not one of substantive law at all—compelling or justifying dismissal of the suit—but one of procedure and evidence only . . ."); *cf. United States v. Coplon*, 185 F.2d 629, 638 (2d Cir. 1950) (dictum) (L. Hand, J.) ("This privilege will often impose a grievous hardship, for it may deprive parties . . . of power to assert their rights or to defend themselves. That is a consequence of any evidentiary privilege."), *cert. denied*, 342 U.S. 920, 72 S.Ct. 362, 96 L.Ed. 688 (1952).[10]

We wholeheartedly agree with the arguments so elegantly and persuasively marshalled by the dissent—that the technicality of who is plaintiff and who is defendant should not matter, that resolution should not relate to who has won the race to the courthouse. The arguments compellingly support our position. The burden of going forward on the evidentiary points depends on a party's posture, on what would be the customary assumption in the absence of proof to the contrary, and on usual accessibility, not on the extraneous accident of

(e) Effect of sustaining claim. If a claim of privilege is sustained in a proceeding to which the government is a party and it appears that another party is thereby deprived of material evidence, the judge shall make any further orders which the interests of justice require, including striking the testimony of a witness, declaring a mistrial, finding against the government upon an issue as to which the evidence is relevant, or dismissing the action.

It may be remarked, however, that the neutrality of the Navy's stance in the present action between two private parties is somewhat compromised through its having obtained attorneys from the Department of Justice to represent Grimes as well as to present the claim of state and military secret privilege and the supporting material to the court.

10. *Cf. Jabara v. Kelley*, 476 F.Supp. 561, 575 (E.D.Mich.1979) ("It may well be that a public trial on the nature of the FBI's investigation will be impossible because of national security considerations. However, the Court cannot take such considerations into account when deciding a motion for summary judgment."); *Republic of China v. National Union Fire Ins. Co.*, 142 F.Supp. 551 (D.Md.1956) (holding that

the United States was not barred from maintaining a libel against ship insurers although it had invoked a state secrets privilege with respect to the answer to one interrogatory and the insurers contended that the answer might help them establish a defense of absence of due diligence and reasonable efforts to recover vessels whose masters, officers, and crews had defected in Singapore or Hong Kong with the ships to the government of the People's Republic of China); *United States v. Haugen*, 58 F.Supp. 436 (E.D.Wash.1944) (stating by way of dictum that, although certain contracts were subject to a state-secrets privilege, a criminal defendant could have been convicted if the government had introduced oral evidence concerning certain aspects of the contracts so long as the evidence was given by a person who had seen the original contracts and who was trained in the art of drawing and construing contracts), *approved, Haugen v. United States*, 153 F.2d 850 (9th Cir. 1946) (affirming criminal conviction where, after prosecution's case had been reopened, secondary evidence of the contents of secret contracts had been given by a lawyer who had possession of duplicate originals while testifying).

who is named plaintiff or defendant. Hence, in order that the parties may be treated evenhandedly it is crucial that neither party be preferred, that neither be given an advantage because of inaccessibility of evidence on privilege grounds. Both must proceed as if the evidence did not exist.

If the deletions through privilege were so severe that a *prima facie* case could not be made out, Farnsworth Cannon would lose. Its claim would be dismissed not because it was plaintiff but because, plaintiff or defendant, it could not establish a vital point. However, as this majority opinion elsewhere demonstrates, a *prima facie* case can be made out by Farnsworth Cannon, even though the privileged material is altogether inaccessible, and so it should be allowed to proceed. Grimes will be accorded exactly equal treatment, regardless of who got to the courthouse first. If he can make a defense without resort to the privileged information, he shall be free to do so. Under our rule, he would have been equally free to press his allegations had he been the nominal plaintiff, presenting his assertion to the court as a claim for declaratory judgment. If lack of admissible evidence eventually required dismissal of such a claim, the neutral rule which we reaffirm would still allow the nominal defendant to press a counterclaim so long as it had sufficient admissible evidence to make out a *prima facie* case. Thus the majority opinion, rather than the dissent effects an equality of treatment which will ensure a fairer, more equable result.

In this case we are not at all confronted with a race to the courthouse. Grimes, the present defendant, would not have improved his posture by taking the litigation initiative. But, if the situation were otherwise and if the usual burden of going forward, of proof, or of persuasion were consequently shifted, the shift would have nothing to do with the state secrets privilege.

The shift would occur because of rules associated with other aspects of the case,[11] rules which would be equally applicable were the case one in which no state secrets privilege arose at all. Hence the position of the majority remains a neutral one with respect to the effects of the state secrets privilege, according it no advantage or disadvantage, limiting its applicability to making the evidence unavailable without regard to which party would be hurt by the unavailability.

It appears that, to some extent at least, the dissent proceeds on the assumption that Farnsworth Cannon cannot, without the privileged material, make out a *prima facie* case. If that be so, we have no difference of law—only a relatively narrow one of fact. The majority opinion in Part IV takes pains to show that, even without the privileged material, Farnsworth Cannon could make out a *prima facie* case. The majority opinion has further emphasized that, if it could not, Farnsworth Cannon would suffer dismissal.

As we suggest in Part V, defendant may not be as totally handicapped as he fears.

### IV.

In determining whether the affidavit of plaintiff's president, in light of the assertion of privilege, is sufficient to enable plaintiff's action to survive a motion for summary judgment, we note that there is a virtually complete absence of Virginia authority relating to the tort of interference with existing or prospective contractual relations. *Zoby v. American Fidelity Co.*, 242 F.2d 76 (4th Cir. 1957), *aff'g*, 143 F.Supp. 763 (E.D.Va.1956), presented circumstances in which both this court and the district court assumed, for purposes of a summary judgment motion, that the plaintiff would have been awarded a contract except for actions by the defendant and that, consequently, the ingredients of the tort had been made out. But in *Zoby* our predeces-

---

**11.** When state law provides the rule for decision in a suit for declaratory judgment in federal court, whether or not the burden of proof should be shifted is determined according to the rule in the forum state for similar declarato-ry actions. *See Fireman's Fund Ins. Co. v. Videfreeze Corp.*, 540 F.2d 1171, 1175 (3d Cir. 1976), *cert. denied*, 429 U.S. 1053, 97 S.Ct. 767, 50 L.Ed.2d 770 (1977).

sors disposed of the matter on the grounds that the defendant in that case had been privileged to engage in the conduct complained of. *McDonough v. Kellogg*, 295 F.Supp. 594 (W.D.Va.1969), which was cited by defendant, concerns Ohio law.

In the absence of other sources from which to determine Virginia law, we repair to Restatement (Second) of Torts § 766B (1979):[12]

§ 766B. Intentional Interference with Prospective Contractual Relation

One who intentionally and improperly interferes with another's prospective contractual relation (except a contract to marry) is subject to liability to the other for the pecuniary harm resulting from loss of the benefits of the relation, whether the interference consists of

(a) inducing or otherwise causing a third person not to enter into or continue the prospective relation or

(b) preventing the other from acquiring or continuing the prospective relation.

The proof which at this posture of the case we must assume Farnsworth Cannon can supply from nonprivileged sources would suffice to make out the tort under § 766B. The existence of the contracts on December 12, 1976, is not in dispute. It is the existence of the contracts, not their precise contents nor the operations under them, which is the critical component of plaintiff's case.

Plaintiff can additionally adduce, without invading the Navy's secrets, proof that, in circumstances highly suggestive of personal motive and malice, defendant sought abrogation or nonrenewal by the Navy of the extant contracts. Plaintiff's assertion that renewal would normally have been a matter of course can by established by evidence of past practice and without inquiry as to the specific terms of and conduct under the contracts between Farnsworth Cannon and the Navy. Such evidence would be sufficient, in a *prima facie* way at least, to create a disputed question of fact over the elements of the tort, including proximate cause.[13]

Defendant asserts that proof of proximate cause necessarily involves the introduction of evidence about the mental processes of decisionmakers in the Department of the Navy and that such evidence is privileged. Although that evidence is indeed privileged, the existence of the privilege does not bar a factfinder from reaching a decision based on reasonable inferences about what those processes probably were, so long as the inferences are adequately grounded on nonprivileged information which is in evidence. The superiority of more direct, but unavailable proof does not invalidate findings of fact rationally based on the circumstantial evidence which is before the factfinder.

As for plaintiff's capability to prove the amount of its damages, in the first instance, at least nominal damages would be recoverable if there was some harm.[14] Moreover, it is reasonable to assume that compensatory damages could be shown through the testimony of Robert Doss or the tax returns and books and records of Farnsworth Can-

---

**12.** Our predecessors, in *Zoby*, resorted to the Restatement. *See* 242 F.2d at 80. Virginia courts tend to apply Restatement pronouncements in the absence of controlling precedents. *See e. g., Featherall v. Firestone Tire & Rubber Co.*, 219 Va. 949, 962, 252 S.E.2d 358, 366 (1979) (citing for a particular point of law Restatement (Second) of Torts § 388 (1965)); *Lee v. Southland Corp.*, 219 Va. 23, 27, 244 S.E.2d 756, 759 (1978) (citing for a particular point of law only non–Virginia authorities, including Restatement (Second) of Torts § 688 & Comment g (1977)). *But cf., e.g., Watt v. McKelvie*, 219 Va. 645, 248 S.E.2d 826 (1978) (rejecting Restatement (Second) of Torts § 576 (1977) and holding that the original publisher of a defamation is not subject to liability for a repe-

tition which is itself absolutely privileged because made in the course of a judicial proceeding).

**13.** Any issue as to whether performance by Farnsworth Cannon had been satisfactory to the point of meriting consideration for renewal would be one as to which the defendant must go forward, especially in light of the Navy's letter of June 29, 1978. So would any assertion that the departure of Frances Doss from plaintiff corporation was the cause of the nonrenewal.

**14.** *See* Restatement (Second) of Torts § 774A, Comment c (1979).

non. They should disclose what profit, if any, was made under contracts between Farnsworth Cannon and the Navy. In the normal situation, it might have been incumbent on Farnsworth Cannon to supply, for purposes of the motion for summary judgment, material indicative that it would prove damages compensatory in nature, especially in light of the claim for punitive damages which could only be sustained through proof of compensatory damages.[15] However, at the time the record was made for the purposes of the motion to dismiss and Farnsworth Cannon submitted the affidavit of its president, all its records, documents and files relating to the Navy contracts had been turned over to the Director of Naval Intelligence and not returned, despite a request by Farnsworth Cannon. In such circumstances, at so preliminary a stage in the proceeding, it would not be appropriate to penalize Farnsworth Cannon for an inability to be specific about compensatory damages it would expect to prove.

### V.

Just as plaintiff appears able to make out the elements of the tort from circumstantial evidence, even without recourse to the materials as to which privilege has been asserted, Grimes may be able similarly to make out the existence of his defenses. No effort of this kind was made below. On remand, the district judge should afford Grimes an opportunity to seek to establish, by affidavit or otherwise, the existence of testimony or documents not subject to the asserted secrecy privilege which would establish the uncontroverted existence of a defense or defenses.[16] Such an opportunity will substantially minimize the tensions necessarily produced by this case between the accepted doctrine that every litigant is entitled to his day in court and the assertion of the secrecy privilege essential to the common welfare. *Cf. Heine v. Raus*, 305 F.Supp. 816 (D.Md.1969) (granting summary judgment for a defendant pursuant to *Barr v. Matteo*, 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959), where defendant established his instructions and authorization for them by means of sworn, written responses by the Director of Central Intelligence to questions which had been submitted by the plaintiff), *aff'd*, 432 F.2d 1007 (4th Cir. 1970), *cert. denied*, 402 U.S. 914, 91 S.Ct. 1368, 28 L.Ed.2d 658 (1971).

### VI.

If such an approach does not result in summary judgment and the case must go forward to trial, the district court will undoubtedly cooperate with counsel for the parties in exploring techniques to reduce those tensions.[17] Without in any way intending to direct one approach or another,

---

**15.** *See O'Brien v. Snow*, 215 Va. 403, 210 S.E.2d 165 (1974); *Zedd v. Jenkins*, 194 Va. 704, 74 S.E.2d 791 (1953).

**16.** Any such material would have to be introduced in a fashion in which the plaintiff has access to it. *See Kinoy v. Mitchell*, 67 F.R.D. 1, 15 (S.D.N.Y.1975) (denying a government motion for summary judgment for defendants which was based in part on materials submitted *in camera* in connection with an assertion of a state–secrets privilege):

Simultaneously, therefore, the Government presents the Court, *in camera*, with material which it asserts must be withheld from plaintiffs as privileged, yet which it requests the Court to consider in ascertaining material facts and drawing legal conclusions concerning dispositive issues in the case. In this Court's view such a course is wholly unacceptable. Our system of justice does not encompass *ex parte* determinations on the merits of cases in civil litigation. Either the documents are privileged, and the litigation must continue as best it can without them, or they should be disclosed at least to the parties, in which case the Court will rule after full argument on the merits.

*But cf. Heine v. Raus*, 399 F.2d 785 (4th Cir. 1968) (vacating summary judgment for defendant but suggesting in a dictum that if necessary the district court might consider, *in camera*, privileged material required for a defense).

**17.** *See generally*, Haydock, *Some Evidentiary Problems Posed by Atomic Energy Security Requirements*, 61 Harv.L.Rev. 468, 478–91 (1948); Zagel, *The State Secrets Privilege*, 50 Minn.L. Rev. 875 (1966); Note, *Keeping Secrets from the Jury: New Options for Safeguarding State Secrets*, 47 Fordham L.Rev. 94, 109–13 (1978); Note, *Military Secrets as an Evidentiary Problem in Civil Litigation*, 4 J.Pub.L. 196, 200–02 (1955).

we suggest examination of the possibility of a waiver by the parties of jury trial, with an *in camera* disposition by the court.[18] In this connection, the Secretary of the Navy has already displayed an admirable willingness to make the classified information involved available for purposes of forwarding disposition of the case.

Should there be difficulties about securing clearance for counsel presently representing plaintiff, thought might be given to identification of other counsel to represent plaintiff, to whom clearance might be afforded. By making his affidavit available to the district court and to this panel, the Secretary of the Navy has acknowledged that just resolution of cases sometimes creates a limited "need to know" in judicial personnel. If it is necessary for this case to go to trial, then counsel for plaintiff, as an officer of the court, would have a comparable need to know. If plaintiff is represented at trial by counsel who is eligible for clearance, we assume that the Secretary would respond appropriately to that need.[19]

Insofar as court personnel necessary to conduct of the trial are concerned, we suggest that, if the official court stenographer cannot be granted clearance, the Navy Department in all probability has competent stenographic personnel qualified to record the proceedings and cleared to do so. If no arrangement for clearance of a courtroom clerk can be worked out, perhaps the district judge, in the extraordinary circumstances produced by the case, would conduct the trial without the assistance of a clerk.

Such arrangements may not be feasible. They will by their nature place a strain on the smooth functioning of the judicial process. It is better, however, for the process to function under such a strain than not to function at all to resolve a *bona fide* dispute of some significance.

We, therefore, reverse and remand, with instructions that the case be allowed to proceed in light of the observations contained in this opinion.

REVERSED AND REMANDED.

JAMES DICKSON PHILLIPS, Circuit Judge, specially concurring and dissenting:

With all respect for the court's admirable effort to work out a satisfactory accommodation of the conflicting values and interests flowing from the sovereign's claim of state secret privilege in this case, I nevertheless disagree with critical parts of the analysis and reasoning by which the decision to remand is reached. Therefore, though I agree that remand is appropriate, I would do so for different reasons and consequently with a quite different mandate for further proceedings in the district court.

I

A claim by the national sovereign of state secret evidentiary privilege in litigation between private parties creates a problem that seems to me to be *sui generis* in the administration of justice.[1] Accordingly, the

---

**18.** See *Loral Corp. v. McDonnell Douglas Corp.*, 558 F.2d 1130 (2d Cir. 1977) (holding that the parties to Air Force subcontracts had effectively waived their right to jury trial of issues involving the subcontracts and approving a district court order which had referred the case to a magistrate, in part better to protect the secrecy of the classified material which would be essential to trial of the issues); *Halpern v. United States*, 258 F.2d 36 (2d Cir. 1958).

During World War II a special provision was added to the admiralty rules allowing any wartime admiralty proceedings to be conducted "in private" and any papers in such proceedings to be "impounded" if the court had "reason to believe that disclosure of them may be contrary

to the national interest." 316 U.S. 717 (1942), *suspended*, 328 U.S. 882 (1946).

**19.** See *Loral Corp. v. McDonnell Douglas Corp.*, 558 F.2d 1130, 1132 (2d Cir. 1977) ("The Department of Defense has cleared, or can and will clear, for access to the material the judge and magistrate assigned to the case, the lawyers and any supporting personnel whose access to the material is necessary.").

**1.** I must concede a lack of specific decisional authority for this proposition. But I suggest that this many reflect more than anything else the relative dearth of judicial opportunities to work out a detailed jurisprudence of state secret privilege. The limited experience of American courts in this respect is expressly recog-

appropriate solution may well be at odds with the judicial system's ordinary response to the unavailability–for whatever reason [2] –of particular items of evidence. That ordinary solution, as the majority points out, is simply to let this burden fall as it will on the parties to litigation. This solution, it is implied, preserves a "neutral" stance for the system and subjects the parties equally to what is simply another instance of those mischances of litigation that are inevitable in the workings of an adversary system, but that are made tolerable by the fact that in the long haul they essentially balance out.

This, I think, is not the appropriate response of the system where state secret privilege is involved. Foremost among several unique characteristics of this privilege is the fact that it is imposed at the behest of the same sovereign who provides the formal forum and mechanisms for resolution of private citizen disputes. Invocation of this privilege may therefore put in direct conflict two interests of the same public for whose benefit both privilege and litigation process are provided. When the sovereign determines that to further one of these public interests a substantial body of relevant evidence must not be made available in particular private litigation, I think that a different sort of "neutrality" in respect of the litigants is thereby commanded. The paramount concern of the system in such a case must of course be protection of the public interest that underlies the privilege. The secondary concern is to protect the other public and the private interests in allowing the dispute to be litigated in as full and free and normal a fashion as possible.

In assessing the latter concern, it seems to me that whether a litigant whose proof is affected by the privilege is nominally aligned as plaintiff or defendant, and whether he is asserting a claim or a defense, is essentially irrelevant. As great a duty is owed the citizen who as defendant is dependent upon privileged evidence to establish a defense as to the citizen who as claimant is dependent upon privileged evidence to establish a claim–no more and no less for the one than the other. Each is attempting within controlling principles of law enforced by the same sovereign invoking the privilege–to have determined in a way favorable to him his legal relations with the opposing litigant. Indeed, in much litigation (particularly with the advent of declaratory judgment) the cast of parties as claimant or defendant, and whether they are asserting "claims" or "defenses" is dependent simply upon who wins the race to the courthouse. Depending, for example, upon who wins the race, a party to a contract may find himself either asserting as plaintiff a claim for rescission of the contract for fraud or as defendant asserting the defense of fraud to a claim for breach, relying in either event on the same body of fact and law to vindicate his legal position. As has been noted in another but related context, all litigants, no matter whether cast as plaintiffs or defendants in particular litigation, are equally involuntary participants in the formal litigation process, and are accordingly entitled to equal treatment in respect of their ability to procure and present relevant evidence. *Schlagenhauf v. Holder*, 379 U.S. 104, 113–14, 85 S.Ct. 234, 240, 13 L.Ed.2d 152 (1964). It is for this

---

nized in *United States v. Reynolds*, 345 U.S. 1, 7, 73 S.Ct. 528, 531, 97 L.Ed. 727 (1953).

**2.** State secret privilege is of course merely one of many potential causes–both legal and nonlegal–for the unavailability of evidence in particular litigation. Among the legal causes for which the legal system must assume responsibility and give justification, state secret privilege is merely one of a number of evidentiary privileges. With all such privileges it shares a characteristic that critically distinguishes them from the other great category of legal causes for unavailability of evidence, the exclusionary

rules: privilege's justification lies completely outside and at odds with concerns for true fact finding, while the exclusionary rules are designed to serve the fact finding goal. *See generally* McCormick's *Handbook of the Law of Evidence* § 72 (E. Cleary ed. 1972). In assessing the appropriate response of the legal system to an invocation of state secret privilege it is therefore important to keep in mind that by its very nature as one of these privileges it compromises the intrinsic fairness of the adversary litigation process which has been provided for formal dispute resolution.

reason that the majority's concern for the apparent unfairness to a plaintiff of dismissing his action not only when his claim but also when the defendant's defense is precluded by the privilege seems to me misplaced. On that view it would be fair enough for the contract plaintiff seeking rescission for fraud to have his action dismissed because his claim could not be proved, but unfair if, having lost the race to the courthouse, a contract breach action against him were dismissed because as defendant he could not establish the same legal/factual proposition leading to the same end result in legal relations. This, it seems to me, is not system neutrality, but its opposite. A proper neutrality would seem one that viewed a likely loss of ability by either litigant to establish an essential element of claim or defense, or fairly to rebut an essential element of either as equally unacceptable consequences of the sovereign's invocation of this unique sovereign privilege.[3]

Another characteristic of this privilege that gives it a unique quality is the recognized necessity that its specific basis and its resulting scope can only be determined in a way that masks both basis and scope from the parties by *in camera* consideration of the claim of privilege.[4] This has major consequences for the practical ability of the court and the parties thereafter to proceed under normal procedures. Neither party may know, except by implication, the exact scope of the privilege that is being enforced. The trial judge may be unable to give reasons for particular trial rulings applying the privilege and will frequently have to act *sua sponte* in applying it. Proffers of proof and consequent rulings may themselves violate or practically compromise the privilege. Because appellate review has similarly to be conducted *in camera* with respect to the basis and scope of the privilege, any resulting appellate opinion must similarly mask from the litigants, the public, and the profession significant elements of the actual rationale for decision.

None of these difficulties and artificialities taken alone may so far inhibit the litigation process as to draw in question its essential utility for resolving a dispute; but in sum, and in particular cases, I think it

**3.** This may perhaps be better seen by suggesting that the only proper vantage point for assessing "fairness" as between the parties is at a time pre–dating the invocation by either of the legal process. Once the process has been invoked so that one party has become a claimant asserting a legal grievance, considerations of relative fairness are likely to be skewed by unconscious assumptions that claimants are more likely than defendants to be actually in the right in the ordinary course. From the perspective of a litigation process already underway, it is thus possible with some apparent plausibility to describe the parties' situation in the "heads I win, tails you lose" way suggested by the majority in depicting the plaintiff's plight if the action can be dismissed because the defendant cannot fairly defend against the claim. p. 271. But this is unfair only if the plaintiff is the party actually in the right, a matter obviously not determinable at the time. From the more appropriate pre–litigation vantage point it is more easily recognized that the probabilities of actual right must be considered to lie equally as between all putative parties. Only in retrospect and armed with knowledge of the actual cast of right as between the parties could fairness in this respect be accurately gauged. From this latter vantage point it could of course rightly be seen that a plaintiff in the

right had suffered unfairness by the dismissal of his action because of the privilege's impact upon either his or the defendant's case. But it could also be seen that a defendant in the right had suffered equal unfairness by the failure to dismiss an action in which he could not establish his privilege–barred defense. If any concession to a presumed greater probability of general claimant right is needed in assessing relative fairness, I suggest that it is adequately supplied by the requirement that a defendant's privilege–barred defense must appear to be "colorable" and "in good faith" to justify dismissal under the test proposed in this opinion. *See* Part II *infra*.

**4.** Of course the degree to which the actual scope of the privilege is masked from the parties will vary from case to case, and will depend to a considerable extent upon the way in which the privilege is invoked. It is invoked pre–trial in two basic ways: a) in response to specific discovery efforts, and b) by a general claim of privilege unrelated to expressly identified material, as in the instant case. The latter will commonly mask the scope of privilege to a greater degree than the former, and hence will present in more aggravated form the problem described in the body of this opinion.

manifest that they may. It is quite conceivable to me that in a given case it might rightly be judicially determined that the undisclosable scope of privilege lies so completely athwart the scope of proof relevant to resolution of the issues presented that litigation constrained by administration of the privilege simply could not afford the essential fairness of opportunity to both parties that is a fundamental assumption of the adversary system.[5] In such a case, it seems to me that the right solution is to withdraw from these litigants their normal right of access to the formal dispute resolution forum provided by the sovereign.

Finally, it seems necessary in assessing whether to allow litigation to proceed to take into account the danger of unwitting compromise of the privilege in the course of attempting to skirt its edges. We are, after all, dealing here with matter that lies peculiarly within the domain of the professional intelligence operative and outside the normal ken of the judicial officer. However dubious a judicial officer might be of the actual public danger involved in the compromise of a particular privilege, it seems to me a given of the situation that he must simply assume ultimate danger once the claim of privilege is upheld. This being so, it seems to me not paranoia but simple judiciousness to assume further that the litigation process could itself be under professional intelligence surveillance.[6] In consequence, it would seem elemental that in deciding whether to allow the litigation to proceed at all the judicial officer must assume that in making specific decisions affecting the admission of evidence he will incline toward avoiding any risks of compromise of the privilege by inadvertence, and thus against the parties' interest in the introduction of evidence lying questionably within the scope of privilege.

## II

All this considered, I think that a court confronted with a claim of state secret privilege should proceed as follows. First, of course, it must decide whether the claim should be upheld. This has been done here; the claim has been upheld; and the validity of that determination is not challenged on this appeal. I agree with the majority that this threshold decision of itself decided nothing about the further conduct of the litigation.[7] Until the court *sua sponte* or on motion of a party rules otherwise, the only effect of upholding this or any such claim is to make evidence within the scope of the privilege inadmissible when and if offered by either party.

But the court may, on motion of a party as here or *sua sponte*, consider as a further threshold question whether in view of the privilege's existence, the litigation should be entirely foreclosed at the outset by dismissal of the action. This is a decision I think rightly committed in the first instance to the informed discretion of the trial judge. In making it, I think he should

5. It is of course impossible to lay down a general standard for measuring this. In a rough and ready way, I would think the line is crossed at that point where the judge can sense that the actual dispute as defined by the issues so far differs from the dispute that could be litigated while honoring the privilege as to draw in question the fairness of attempting to apply to the restricted dispute the legal principles appropriate to resolution of the actual dispute.

6. The general difficulty faced by the judiciary in ruling on state secret privilege claims is obvious. *See United States v. Reynolds*, 345 U.S. 1, 73 S.Ct. 528, 97 L.Ed. 727 (1953). To the general difficulty may well be added in a particular case a large dose of specific skepticism about the legitimacy of the government's classification of the material in question, and further about the true danger posed by its dis-

closure. It seems to me, however, that any skepticism of this sort must simply be worked out in deciding whether to uphold the claim of privilege in the first instance. Once that is done, the skepticism cannot be carried over to administration of the privilege in the litigation process. Having decided that the claim is justified, I see no way to proceed thereafter except on the basis that protection of the state secret is of utmost importance to the public interest and that in consequence all doubts about administering the privilege should be resolved on the side of non-disclosure. *See also Halkin v. Helms*, 598 F.2d 1 (D.C.Cir.1978).

7. This, I think, is all that the authorities cited on pages 270–271 of the majority opinion stand for.

dismiss if it appears either that: (a) the plaintiff cannot establish a prima facie case because of the privilege; (b) the defendant cannot fairly present a good faith, colorable affirmative defense, or fairly rebut the plaintiff's prima facie case, because of the privilege;[8] (c) the privilege so far obstructs normal proof in respect of the issues presented by the parties as to deprive the litigation process of its essential utility for fair resolution of those issues; or (d) the danger of inadvertent compromise of the protected state secrets outweighs the public and private interests in attempting formally to resolve the dispute while honoring the privilege.

In considering these possibilities the trial court would of course have to preserve confidentiality of the privileged matter, which means that the basis for any order dismissing would necessarily be masked from the parties. Its validity as an informed exercise of discretion could then be reviewed by the appellate court, but again only with the aid of *in camera* consideration of the relation of the scope of privilege to the order of dismissal.

As I read the majority opinion, it would permit the district judge to consider only point (a) in deciding whether to dismiss an action because of the impact of a state secret privilege. While it would allow the judge to consider a defendant's proffer of proof in respect of affirmative defenses or rebuttal evidence, it would confine that proffer to fully discloseable material. The consequence, as I see it, would only be to allow a defendant to obtain dismissal if on the basis of such a truncated proffer he would be entitled to summary judgment in any event. The court's opinion would not permit a district judge in the exercise of discretion to dismiss on the basis of points (c) or (d), and as my discussion indicates, I think that judicial authority to dismiss should run to those two possibilities as well in state secret privilege cases.

### III

In the instant case the district court, perhaps taking into account many of these very considerations, nevertheless dismissed specifically only on the basis that without the privileged evidence plaintiff could not establish its prima facie case. While I might be more disposed than the majority to affirm on the basis that dismissal on this ground alone was not an abuse of discretion,[9] a preferable course to me would be to

8. The only way that this can be determined without compromising the privilege is by *in camera* consideration of a defendant's *ex parte* offer of proof (preferably by affidavit) in support of a properly raised affirmative defense or in rebuttal of plaintiff's anticipated proof. Laid alongside the scope of privilege earlier upheld by the judge, the determination whether dismissal is warranted could then be made. I read this court's successive decisions in *Heine v. Raus*, 399 F.2d 785 (4th Cir. 1968), *appeal after remand*, 432 F.2d 1007 (4th Cir. 1970), *cert. denied*, 402 U.S. 914, 91 S.Ct. 1368, 28 L.Ed.2d 658 (1971), as having expressly approved just such a practice. Though conceding *Heine*'s possibly conflicting view, the majority considers it not authoritative on the point and specifically rejects the procedure as unacceptable on the basis that it unfairly masks from the plaintiff any knowledge of the defendant's position, hence any opportunity to challenge it in the regular adversarial mode.

Considerations of *Heine*'s specific authority aside, I respectfully suggest that at this point the plaintiff's normal position in the adversarial process has already been wholly compromised by the *in camera* decision to uphold the claim

of privilege. With the basis and scope of privilege already completely masked, the plaintiff's position is not significantly further compromised by *in camera* consideration of an *ex parte* proffer of proof whose significance could only be effectively challenged if its relation to the scope of the privilege were known. Protection for the plaintiff in respect of this determination by the trial judge lies where it does in respect of the original *in camera* determination to uphold the privilege–in appellate review. While admittedly less than ideal under the circumstances, this review is no less efficacious to protect against error in the one determination than the other, and all must concede that appellate review is the only protection possible in respect of the original *in camera* decision to uphold the claim of privilege.

9. The court's truly imaginative effort to find in Part IV of its opinion a viable shell of plaintiff's claim which might still be proven despite the privilege, and its even more imaginative suggestion in Part VI of truly heroic measures for trying the case in ways which would honor the privilege only serve to impress upon me the validity of the trial judge's perception that the

remand for consideration in light of the principles I have suggested here as the appropriate ones. Consequently, while I concur in the decision to remand, I would do so on the basis here elaborated, and so respectfully dissent from those portions of the court's opinion that conflict with the views here expressed as to the reasons for and proper scope of the remand.

## ON REHEARING EN BANC

Before HAYNSWORTH, Chief Judge, and WINTER, BUTZNER, RUSSELL, WIDENER, HALL, PHILLIPS, MURNAGHAN, SPROUSE and ERVIN, Circuit Judges, sitting en banc.

### PER CURIAM:

In this action for allegedly tortious interference with reasonably expected future contract rights, the United States entered a claim of privilege for state secrets on the basis of an affidavit submitted by the Secretary of the Navy and examined by the district judge in camera. The privilege was upheld, and neither party has taken exception to that action of the district judge.

The district court ordered a dismissal of the complaint upon a finding that the plaintiff could not make out a prima facie case of tortious interference without resort to the information within the excluded state secrets.

On appeal a divided panel of this court reversed and remanded for a trial to determine whether or not the plaintiff could make out a prima facie case without resort to any of the excluded information.

The matter was reheard by the court sitting *en banc* after its members had examined the affidavit of the Secretary of the Navy. That affidavit has not been seen by counsel, and without some disclosure of the affidavit to counsel, the trial lawyers would remain unaware of the scope of exclusion of information determined to be state secrets. Information within the possession of the

parties on the periphery of the suppression order would not readily be recognized by counsel, unaware of the specific contents of the affidavit, as being secret or as clearly having been suppressed by the general order of the district court. In an attempt to make out a prima facie case during an actual trial, the plaintiff and its lawyers would have every incentive to probe as close to the core secrets as the trial judge would permit. Such probing in open court would inevitably be revealing. It is evident that any attempt on the part of the plaintiff to establish a prima facie case would so threaten disclosure of state secrets that the overriding interest of the United States and the preservation of its state secrets precludes any further attempt to pursue this litigation.

Under those circumstances, the district court's dismissal of the complaint is affirmed.

AFFIRMED.

JAMES DICKSON PHILLIPS, Circuit Judge, with whom WINTER and ERVIN, Circuit Judges join, dissenting:

We respectfully dissent from the disposition of this appeal that is mandated in the per curiam opinion of the en banc court.

Happily, the issue presented on this appeal–the proper handling of litigation between private parties in which the government asserts state secret privilege–does not come too often before the courts. When it does come, however, it poses problems of great delicacy for the courts in reconciling the conflicting public and private interests necessarily involved. The issue is one of great public importance and, because of the relative rarity of its appearance, one for which ordering legal principle has not yet clearly emerged in judicial decisions.

That issue has been squarely presented on this appeal. Because of its great public importance, its legal complexity, and the

---

game simply was not worth the candle, all things considered. If, following the approach suggested in this opinion, the district judge were to decide that the game *was* worth the

candle–as he might–I have no quarrel at all with the majority's suggestions of procedures that might then be used to accommodate the conflicting interests during litigation.

lack of clear authority for its management, it is our judgment that we have an obligation—or certainly an opportunity not lightly to be avoided—to speak to it more fully and, in the process, to give better guidance to our district courts, than does the court's opinion.

In the first place, the court's stated basis for affirmance is essentially uninformative to district judges who may in the future seek guidance in similar cases. The district court dismissed the action on the express basis that the plaintiff could not prove a prima facie case because of the state secret privilege. In affirming on another basis— that litigation would pose too high a risk of compromising the state secret—the court has chosen not to address the ground relied upon by the district court nor to indicate whether any other considerations than these two might appropriately be taken into account in ruling on a motion to dismiss because of the impact of state secret privilege. Most important in this latter respect is the ground strongly urged by defendant which in fact provided the focal point of disagreement within the panel that first heard this appeal, 635 F.2d 268, the impact of the privilege upon the defendant's ability fairly to establish his defense. This is simply passed over.

In addition to the uninformative nature of the court's disposition of this appeal, we think it suffers another vice. In affirming on a basis not addressed by the district court, the court has made a first instance judgmental assessment involving a prediction about the probable course of trial that should rightly be committed for first instance exercise of trial court discretion, subject to review by this court under legal guidelines provided by this court. Not only is the practice questionable for resolving this case, it invites repetition in future cases.

Having been thus critical of the court's disposition, it remains to suggest the appropriate one from our viewpoint. That has earlier been done by the author of this opinion in the course of dissenting from the panel majority opinion, 635 F.2d 268, now superseded. It will suffice for purposes of this dissent simply to summarize the ultimate conclusions there reached, and to refer to that opinion for the rationale upon which the conclusions were based.

In summary, we would reverse and remand to the district court for further proceedings on the basis that, as the panel majority held, 635 F.2d 268, the district court erred in concluding that the plaintiff could establish no prima facie case in face of the privilege. However, for reasons developed in the dissent to the panel opinion, we would remand with general instructions that in considering the effect of state secret privilege upon litigation, a district court, in exercise of its discretion, may dismiss, subject of course to appellate review, if it appears either that: (a) the plaintiff cannot establish a prima facie case because of the privilege; (b) the defendant cannot fairly present a good faith, colorable affirmative defense, or fairly rebut the plaintiff's prima facie case, because of the privilege; (c) the privilege so far obstructs normal proof in respect of the issues presented by the parties as to deprive the litigation process of its essential utility for fair resolution of those issues; or (d) the danger of inadvertent compromise of the protected state secrets outweighs the public and private interests in attempting formally to resolve the dispute while honoring the privilege. Of course, since the district court in the instant case has already dismissed—erroneously in our view—upon ground (a), it would be limited upon the remand we suggest to consideration of grounds (b), (c), and (d).

MURNAGHAN, Circuit Judge, dissenting:

I respectfully dissent for the reasons stated in the panel majority opinion. *Farnsworth Cannon, Inc. v. Grimes*, 635 F.2d 268 (4th Cir. 1980).

The *en banc* majority opinion, in my humble judgment, opens a door which should remain welded shut. Any litigant in the Fourth Circuit whose proof is hampered by the invocation of state secrets can hereafter be turned away from his efforts to obtain

justice on the questionable grounds that, for reasons as to which he must remain uninformed, he *might* stumble intrusively into a protected area. The opportunities for unexplicated imposition of arbitrary fiat under the rule the majority adopts are potentially frightening.