Robert J. MAXWELL

v.

The FIRST NATIONAL BANK OF MARYLAND, et al.

Civ. No. WN–88–2702.

United States District Court, D. Maryland.

May 1, 1992.

Motion for Certification for Interlocutory Appeal Denied, July 9, 1992.

---

Lynne Bernabei, Debra S. Katz, Lawrence S. Ottinger, Bernabei & Katz, Washington, D.C., for plaintiff.

Joseph J. Finnerty, Jr., Brigit A. McCann, Piper & Marbury, Baltimore, Md., for defendant First Nat. Bank of Md.

William John Hickey, Washington, D.C., for defendant American Traders Corp.

Paul W. Bridenhagen, U.S. Dept. of Justice, Civ. Div., Washington, D.C., David I. Salem, U.S. Attys. Office, Baltimore, Md., for defendant U.S.

Patti Goldman, Washington, D.C., for Public Citizen and Nat. Security Archive.

## ORDER

NICKERSON, District Judge.

Pending before this Court are Plaintiff's Objections to Magistrate's Report and Recommendation dated October 9, 1991 (Paper No. 92), filed October 29, 1991. The United States has responded (Paper No. 94), and the Plaintiff has replied (Paper No. 98). Upon consideration of Judge Blake's Report and Recommendation and the objections thereto, and after a *de novo* review of the entire matter, the Court determines that Judge Blake's Report and Recommendation should be affirmed and adopted.

Accordingly, IT IS this 29th day of April, 1992, by the United States District Court for the District of Maryland, ORDERED:

1. That the Report and Recommendation of United States Magistrate Judge Catherine C. Blake entered October 9, 1991 (Paper No. 91), is AFFIRMED and ADOPTED;

a. That the United States' motion for a protective order is GRANTED;

b. Mr. Maxwell is precluded from seeking or obtaining any discovery that relates to his allegations of covert relationships between the CIA and either defendant First National Bank or defendant Associated Traders Corp.;

c. Mr. Maxwell is precluded from offering in support of the amended complaint in this case, any evidence that would tend to confirm or deny the alleged connection between the CIA and defendants FNB and ATC;

d. plaintiff's motion to enforce the Court's order of July 19, 1990 and motion for sanctions is DENIED;

e. the United States' motion to stay discovery is DENIED as moot;

f. Public Citizen and National Security Archive's motion for leave to file a brief as *amici curiae* is GRANTED;

g. plaintiff's motion for leave to file in excess of thirty interrogatories is DENIED;

h. plaintiff's motion to defer ruling on United States' motion for protective order until completion of relevant discovery is DENIED;

i. defendants', trustees of ATC, motion for protective order is DENIED as moot;

j. the United States' motion to quash subpoena and stay further discovery is DENIED as moot;

k. defendant FNB's motion for a protective order is DENIED as moot;

2. That Plaintiff's objections to the Report and Recommendation filed October 29, 1991 (Paper No. 92) are OVERRULED;

3. That pursuant to the Court's Order dated November 18, 1991 (Paper No. 95), Plaintiff has twenty (20) days from the date of this Order to file his opposition to Defendant FNB's Supplemental Motion to Dismiss, or in the Alternative, for Summary Judgment;

4. That the Clerk of the Court shall mail copies of this Memorandum and Order to all counsel of record.

## REPORT AND RECOMMENDATION

BLAKE, United States Magistrate Judge.

In accordance with 28 U.S.C. § 636 and Local Rule 301, Judge William M. Nickerson has referred to me the discovery disputes in this case for resolution. On December 26, 1990, pursuant to 28 U.S.C. § 517, the United States of America filed a suggestion of interest in the present case and moved for a protective order, asserting the state secrets privilege. The proposed order has two parts. The first would preclude all discovery that relates to allegations of any relationships between the Central Intelligence Agency ("CIA") and defendant Associated Traders Corporation ("ATC") or defendant First National Bank of Maryland ("FNB"). The second part would bar the introduction at any proceeding in this matter of any information, regardless of its source, that relates to the alleged relationships.

On January 29, 1991, the plaintiff, Robert J. Maxwell, filed an opposition, and on February 21, 1991, the United States filed a reply.[1] This matter is ready for decision.[2] For the reasons set forth below, I recommend that the United States' motion for a protective order be granted.

This dispute arises out of Mr. Maxwell's suit against FNB, ATC, Thomas G. Hardic, John Keating, and Jeremy Tyrone (the trustees for the now defunct ATC), and John Does, one through ten (ten unknown officials of the CIA, Federal Bureau of Investigation, and the Department of Justice). (Am.Compl. ¶ 1). From October 1983 to August 1985, Maxwell was employed by FNB as an international banking executive. During his employment, Maxwell handled letters of credit for ATC. (*Id.* ¶¶ 9, 14). Mr. Maxwell alleges that his superiors at FNB told him that ATC was a CIA corporation. (*Id.* ¶¶ 9, 54).

Mr. Maxwell suspected that ATC was engaged in arm deals in violation of federal law. (*Id.* ¶ 31). When Maxwell questioned these activities, he alleges that FNB and CIA officials threatened him. (*Id.* ¶¶ 66–67). Maxwell alleges that he asked that his name be removed from ATC account records and FNB failed to do so until one

---

**1.** On January 29, 1991, Public Citizen and National Security Archive filed a motion for leave to file a brief as *amici curiae*. (Paper No. 66). I recommend that the motion be granted. In the brief, they argue that the United States' motion for a protective order should be denied. For the sake of clarity, all of the arguments seeking denial of the protective order will be referred to as plaintiff's.

**2.** Various discovery motions are pending in this case. The resolution of the other motions depends on the outcome of the motion for protective order.

**594**

month later. (*Id.* ¶ 68). Maxwell states that his work conditions became so intolerable that he was compelled to resign from FNB, and this caused him to suffer a nervous breakdown. (*Id.* ¶¶ 58, 62).

On June 12, 1990, plaintiff filed an amended complaint which contained five counts: (1) violation of 42 U.S.C. § 1985(2); (2) a *Bivens* claim for violation of First and Fifth Amendment rights; (3) abusive discharge; (4) intentional infliction of emotional distress; and (5) misappropriation of name. Motions to dismiss were filed by FNB and ATC. (Paper Nos. 40–41). In an October 22, 1990 Order, Judge Nickerson granted ATC's motion to dismiss count two and granted FNB's motion to dismiss count two as to the Fifth Amendment claim. (Paper Nos. 55–56).

On February 22, 1989, plaintiff filed a motion to compel discovery from FNB. (Paper No. 16). Specifically, plaintiff requested that Ronald Teather and Robert Dael, his supervisors at FNB, be compelled to answer questions in deposition regarding CIA's connection with FNB and the nature of various shipments by ATC. In addition, plaintiff asked the Court to order FNB to produce all wire fund transfers received by FNB on specified dates. On July 19, 1990, Judge Nickerson granted the motion to compel as to the deposition questions, and as to the documents to the extent that they have a reference to ATC. (Paper Nos. 43–44). The United States intervened with the present motion for a protective order in which it asserts the state secrets privilege. (Paper No. 62).

 The seminal case on the state secrets privilege is *United States v. Reynolds*, 345 U.S. 1, 73 S.Ct. 528, 97 L.Ed. 727 (1953). In *Reynolds*, the Supreme Court of the United States established a three part test to govern a claim of the privilege. "There must be a formal claim of privilege, lodged by the head of the department which has control over the matter, after actual personal consideration by that officer." *Id.* at 7–8, 73 S.Ct. at 531–532 (footnotes omitted); *Fitzgerald v. Penthouse*

*Int'l, Ltd.*, 776 F.2d 1236, 1239–40 (4th Cir.1985). The court must evaluate the claim of privilege without forcing disclosure of the very information that the privilege is designed to protect. *Reynolds*, 345 U.S. at 8, 73 S.Ct. at 532; *Fitzgerald*, 776 F.2d at 1240. In evaluating an assertion of the privilege, a district court should sustain the privilege if it finds "from all the circumstances of the case, that there is a reasonable danger that compulsion of the evidence will expose military matters which, in the interest of national security, should not be divulged." *Reynolds*, 345 U.S. at 10, 73 S.Ct. at 533; *Fitzgerald*, 776 F.2d at 1240; *Ellsberg v. Mitchell*, 709 F.2d 51, 58 (D.C.Cir.1983), *cert. denied*, 465 U.S. 1038, 104 S.Ct. 1316, 79 L.Ed.2d 712 (1984).[3]

The *Reynolds* Court noted that a party's need for the evidence may influence the extent of the court's investigation of the privilege assertion. *Reynolds*, 345 U.S. at 11, 73 S.Ct. at 533; *Fitzgerald*, 776 F.2d at 1240. The Court stated, "Where there is a strong showing of necessity, the claim of privilege should not be lightly accepted, but even the most compelling necessity cannot overcome the claim of privilege if the court is ultimately satisfied that military secrets are at stake." *Reynolds*, 345 U.S. at 11, 73 S.Ct. at 533; *Fitzgerald*, 776 F.2d at 1240; *Ellsberg*, 709 F.2d at 59.

In the present case, plaintiff has noted that the information sought is important to his case, and it would be very difficult for plaintiff to litigate his claims without it. (Pl.Opp. at 29). To establish his case, plaintiff must provide evidence that there was a relationship between the CIA and the defendants. (*Id.* at 28). He also must demonstrate that ATC transactions were illegal in order to prove a wrongful discharge claim. (*Id.* at 29). Because plaintiff has made a strong showing of need for evidence of a relationship between the CIA and the defendants, this Court has conducted an extensive investigation into the United States' assertion of the state secrets privilege.

---

**3.** The privilege extends to diplomatic and intelligence-gathering matters as well as military secrets. *Ellsberg*, 709 F.2d at 57; *Halkin v. Helms (II)*, 690 F.2d 977, 990 (D.C.Cir.1982).

The United States has followed the proper procedure under *Reynolds* in seeking to assert the state secrets privilege. The United States has made a formal claim of the privilege through the present motion, and it is supported by an affidavit by William H. Webster, the Director of Central Intelligence and head of the CIA. The CIA is the agency that has control over the matter because the requested discovery concerns the existence of a relationship between the CIA and ATC or FNB, and may involve CIA records over which Director Webster has control. (Webster Affid. ¶¶ 3, 5). Director Webster states in his affidavit that he has been made aware of the instant case and is familiar with plaintiff's allegations. (*Id.* ¶ 4). After personal consideration, Director Webster has determined that assertion of the privilege in this case is essential to protect the national security of the United States. (*Id.* ¶ 8).

Director Webster states that any confirmation or denial of CIA activities would compromise national security. (*Id.* ¶ 9). The CIA uses "proprietary" businesses which either conduct or appear to conduct business as private companies. (*Id.* ¶ 7). The CIA frequently is asked to respond to requests for information about its contacts with companies alleged to be associated with the CIA. (*Id.*). Director Webster states that it is absolutely essential to prevent a confirmation or denial of such a relationship when to do so would damage national security. (*Id.* ¶ 8).

Director Webster explains that confirmation of relationships with the CIA could jeopardize sources and result in the loss of intelligence. (*Id.* ¶ 9). This could create a chilling effect on the CIA's ability to recruit new sources. Confirmation would also allow foreign intelligence entities to discover CIA methods of operation. (*Id.*); *see also Ellsberg*, 709 F.2d at 57 (harms

against which the privilege is designed to protect include "disclosure of intelligence-gathering methods or capabilities").

A denial of a CIA relationship with a source may be equally damaging. A denial would allow foreign intelligence entities to concentrate efforts elsewhere. (Webster Affid. at ¶ 9). In addition, such a denial would inhibit the ability of the CIA to decline to confirm or deny future allegations because a refusal to respond would be tantamount to a confirmation. (*Id.*).

In addition to its motion and Director Webster's affidavit, the United States has provided a classified *ex parte* declaration for *in camera* inspection by this Court. I have reviewed the motion, responses, and the classified material [4] and recommend that the United States' motion for a protective order be granted.

Plaintiff has made numerous arguments in opposition to the United States' motion. First, plaintiff claims that the government may not assert the privilege to bar discovery between private parties that have no connection with the government. Plaintiff contends that neither he nor FNB or any of its officials have ever had a relationship with the CIA. (Pl.Opp. at 23; *Amici* at 6, 9–10).

The cases involving the government's assertion of the state secrets privilege can be divided into two categories. The first category dealt with requests for information directed at a government agency itself. The courts found that the agencies could assert the privilege. *See Reynolds*, 345 U.S. 1, 73 S.Ct. 528 (upholding assertion of privilege by Secretary of the Air Force to avoid producing Air Force documents); *Northrop*, 751 F.2d 395 (quashing subpoena for documents to Department of Defense based on state secrets privilege in

---

**4.** An *in camera* review of documents by the court is not required as a matter of course in an evaluation of an assertion of the state secrets privilege. *Reynolds*, 345 U.S. at 10, 73 S.Ct. at 533; *Northrop Corp. v. McDonnell Douglas Corp.*, 751 F.2d 395, 401 (D.C.Cir.1984). Because the information sought to be disclosed is central to the plaintiff's ability to maintain this lawsuit, however, I found it appropriate to review the initial classified affidavit dated December 12, 1990, and a supplementary affidavit dated July 10, 1991 submitted at my request addressing certain additional issues. The particular bank records in question were not reviewed beyond those attached to the plaintiff's answer to motion for summary judgment. (Paper No. 12).

suit between two defense contractors); *Ellsberg*, 709 F.2d 51 (government successfully asserted privilege to avoid disclosure by various agencies of surveillance information); *Halkin (II)*, 690 F.2d 977 (upholding CIA claim of privilege to bar discovery from the CIA in suit against CIA officials); *Halkin v. Helms (I)*, 598 F.2d 1 (D.C.Cir. 1978) (upholding National Security Agency claim of privilege to refuse to disclose Agency information).

The second category of cases involved the government asserting the state secrets privilege to prevent discovery from a current or former employee who had entered into a secrecy agreement that barred disclosure of information obtained through the relationship with the government. *See Fitzgerald*, 776 F.2d 1236 (Secretary of Navy successfully asserted the privilege to bar testimony of Navy scientist with knowledge of classified military information); *Farnsworth Cannon, Inc. v. Grimes*, 635 F.2d 268 (4th Cir.1980) (valid assertion of privilege by Secretary of Navy in case against Navy employee).

Plaintiff claims that the United States may not assert the privilege in this case because discovery has been directed only to FNB and its officials, and there is no evidence that FNB or any of its officials have worked for the CIA or signed secrecy agreements with the CIA to keep information confidential. (Pl.Opp. at 23; *Amici* at 9–10).[5] Plaintiff's only support for this contention, however, is his belief, based on conversations with his superiors at FNB, that they did not have security clearances with the CIA. (Pl.Opp. at 4). Plaintiff argues that "unless the CIA can establish

that such a relationship existed, there is no basis for the CIA to silence these individuals." (*Amici* at 10). The state secret that must be protected, however, is the existence of a relationship between the CIA and ATC or FNB. The CIA cannot be forced to establish publicly that FNB officials have worked for the CIA and have entered into security agreements, as a predicate to asserting the state secret privilege to keep that very information from being disclosed. After reviewing the parties' submissions and the *in camera* materials, I am satisfied that the government's assertion of privilege is necessary in this case.

■ Plaintiff's next argument is that the United States may not assert the state secrets privilege because the information has been disclosed to persons without security clearances.[6] Plaintiff states that he is in possession of copies of various FNB documents concerning the ATC accounts.[7] (Pl.Opp. at 4–5). In addition, the possible existence of a relationship between the CIA and defendants has been the subject of published articles. (*Id.* at 16). Thus, plaintiff argues that because the information has been publicly disclosed, the government may not assert the state secrets privilege to bar the use of information in this suit. (*Id.* at 25–26).[8]

■ The state secrets privilege belongs to the government. It can be neither claimed nor waived by a private party. *Reynolds*, 345 U.S. at 7, 73 S.Ct. at 531. Plaintiff has failed to establish that the government has waived its privilege. The nature of a covert operation with a proprietary business is likely to result in contacts

---

**5.** At the request of the court, the CIA's supplementary *in camera* affidavit, specifically addressed the issue of secrecy agreements that may have been in effect as to any FNB or ATC officials.

**6.** Plaintiff also claims that the information is not subject to the state secrets privilege because it is not classified. (Pl.Opp. at 18–19). However, the "privilege applies regardless of whether the information has actually been classified pursuant to the substantive and procedural requirements of applicable statutes or executive orders." *Halkin (II)*, 690 F.2d at 996 n. 69.

**7.** In support of the argument that he cannot be barred from introducing evidence in his possession, plaintiff cites *Butterworth v. Smith*, 494 U.S. 624, 110 S.Ct. 1376, 108 L.Ed.2d 572 (1990) (statute prohibiting witness from ever disclosing his own grand jury testimony violated the First Amendment as to disclosure after the grand jury's term expired). This case and others cited by plaintiff do not involve national secrets, and do not support plaintiff's position.

**8.** It appears that any "public disclosure" is primarily a result of Mr. Maxwell's disclosure of information to the press.

between the proprietary business and private sector businesses. In this case, plaintiff alleges that ATC was a CIA business which established accounts with FNB. A CIA business may need to engage a private bank to carry out its transactions. This necessarily would involve submitting information to the bank for account and transaction purposes. This information may be designed to appear as if the CIA business is a private business. Private sector employees without security clearances may handle this information in the course of employment with the Agency's intent that they not know the source of the documents.

■ Accidental disclosure cannot be viewed as an affirmative waiver by the government. If there is accidental disclosure to unauthorized persons, the government must retain its ability to minimize the damage by asserting its privilege to refuse to confirm or deny the existence of the secret information. In this case, plaintiff states that he has possession of copies of various ATC account documents. They may or may not contain information that is damaging to national security. If the government were forced to disclose more information regarding a possible CIA relationship to ATC or FNB, it could result in the publication of secrets that could jeopardize national security. The court in *Halkin (I)* discussed the problems involved in identifying whether information is sensitive:

> It requires little reflection to understand that the business of foreign intelligence gathering in the age of computer technology is more akin to the construction of a mosaic than it is to the management of a cloak and dagger affair. Thousands of bits and pieces of seemingly innocuous information can be analyzed and fitted into place to reveal with startling clarity how the unseen whole must operate. As the Fourth Circuit Court of Appeals has observed:
>
>> The significance of one item of information may frequently depend upon knowledge of many items of information. What may seem trivial to the uninformed may appear of great mo-

ment to one who has a broad view of the scene and may put the questioned item of information in its proper context. The courts, of course, are ill-equipped to become sufficiently steeped in foreign intelligence matters to serve effectively in the review of secrecy classifications in that area.

*Halkin (I)*, 598 F.2d at 8–9 (quoting *United States v. Marchetti*, 466 F.2d 1309, 1318 (4th Cir.); *cert. denied*, 409 U.S. 1063, 93 S.Ct. 553, 34 L.Ed.2d 516 (1972).

■ This situation is analogous to a request for documents under the Freedom of Information Act ("FOIA"). Under FOIA an item must be "officially acknowledged" before disclosure can be required on the grounds that the information previously has been made public. *Fitzgibbon v. C.I.A.*, 911 F.2d 755, 765 (D.C.Cir.1990) (citing *Afshar v. Department of State*, 702 F.2d 1125 (D.C.Cir.1983)). There are three requirements for an item to be considered "officially acknowledged": (1) the information requested must be as specific as the information previously released; (2) the information requested must match the information previously disclosed; and (3) the information requested must already have been made public through an official and documented disclosure. *Id.*

■ Plaintiff contends that the published articles speculating on a relationship between the CIA and ATC constitute public disclosure so as to bar the assertion of the state secrets privilege. Such a claim would fail to meet the FOIA public disclosure test. *See Alfred A. Knopf, Inc. v. Colby*, 509 F.2d 1362, 1370 (4th Cir.) ("It is one thing for a reporter or author to speculate or guess that a thing may be so or even, quoting undisclosed sources, to say that it is so; it is quite another thing for one in a position to know of it officially to say that it is so"), *cert. denied*, 421 U.S. 908, 95 S.Ct. 1555, 43 L.Ed.2d 772 (1975); *Marchetti*, 466 F.2d at 1318 ("Rumor and speculation are not the equivalent of prior disclosure"). An assertion of the state secrets privilege may well involve information more sensitive than that sought under a FOIA request. The state secrets privilege,

therefore, must have a standard for waiver based on public disclosure that is at least as stringent as the one under FOIA. *See also Halkin II,* 690 F.2d at 994 (prior disclosure of some information about a project does not require disclosure of additional information about the same project).

Plaintiff next asserts that the information at issue may involve illegal activities and thus may not be protected by the state secrets privilege. (Pl.Opp. at 7–8; *Amici* at 14). First, Mr. Maxwell's suggestion that the information involves illegal activities is speculation.[9] Second, the cases that he cites do not support his premise. Plaintiff relies on *Goldberg v. U.S. Dep't of State,* 818 F.2d 71 (D.C.Cir.1987), *cert. denied,* 485 U.S. 904, 108 S.Ct. 1075, 99 L.Ed.2d 234 (1988), which involved a discussion of Executive Order 12356. The Executive Order forbids classification of information that involves violations of law, but is not a threat to national security. *Id.* at 77. In the present case, plaintiff has failed to establish that the government is asserting the state secrets privilege solely to cover up illegalities. To the contrary, Director Webster's affidavit and the supporting *in camera* documents establish that the protective order is needed to protect national security.[10] (Webster Affid. ¶ 8).

■ Plaintiff also challenges the sufficiency of Director Webster's affidavit. (Pl. Opp. at 34). Plaintiff claims that Director Webster has not personally read every document that is the subject of the proposed protective order. Thus, plaintiff argues that Director Webster has failed to give personal consideration to the matter as required by *Reynolds.* (*Id.* at 35–37).

Plaintiff takes an unrealistic view of the duties of the Director of Intelligence. In an organization the size of the CIA, the Director must rely to a degree on other agency officials. Although Director Webster may not have personally read every document, his affidavit is sufficient to convince this Court that he has assessed the necessity of asserting the privilege in consultation with other agency officials who are closely involved with the information involved in this case. *See Northrop,* 751 F.2d at 400 (finding sufficient personal consideration by Secretary of Defense when "he had reviewed a representative sample of the documents as well as affidavits of staff members who had received all of the documents"); *Molerio v. F.B.I.,* 749 F.2d 815, 821 (D.C.Cir.1984) (personal examination of individual documents not necessary when whole object of discovery and suit was to establish a state secret).

Invoking the First Amendment, Mr. Maxwell denies the existence of any precedent that would preclude him from offering in evidence bank documents already in his possession or his own testimony about alleged admissions by bank officials concerning the relationship of ATC, FNB, and the CIA. The Fourth Circuit's opinions in *Fitzgerald* and *Farnsworth,* however, support the issuance of a protective order such as that proposed by the government, in that those opinions authorize the even more drastic result of dismissing the plaintiff's case. Indeed, the assertion of the state secrets privilege in this case may, upon further motion, cause this court to evaluate whether the case may proceed at all.[11]

■ A successful assertion of the state secrets privilege may defeat "worthy claims for violations of rights that would otherwise be proved." *In re U.S.,* 872 F.2d 472, 476 (D.C.Cir.1989). "If the information is essential to establishing plaintiff's prima facie case, dismissal is appropriate." *Id; see also In re Under Seal,* 945 F.2d

---

**9.** The classified material reviewed by this court *in camera,* including the supplementary affidavit, does not support the plaintiff's speculation.

**10.** The cases governing FOIA requests are persuasive. *Cf. Founding Church of Scientology v. N.S.A.,* 610 F.2d 824, 829 n. 49 (D.C.Cir.1979) (under FOIA, NSA may refuse to produce documents that evidence illegal activity if disclosure would endanger national security); *Navasky v.*

*C.I.A.,* 499 F.Supp. 269, 274 (S.D.N.Y.1980) (finding "question of illegality irrelevant to the [FOIA] exemption claims").

**11.** For that reason, Judge Nickerson has treated this referral as one involving a dispositive motion, subject to *de novo* review if objections are filed timely. *See* 28 U.S.C. § 636(b)(1) and the court's orders of June 4, 1991 and May 30, 1991.

1285 (4th Cir.1991) (summary judgment for defendant was proper when plaintiff was unable to demonstrate a dispute over material fact because assertion of privilege barred access to evidence regarding claim for intentional interference with business or occupation); *Farnsworth*, 635 F.2d at 281 (affirming dismissal of complaint because plaintiff's attempt to establish a *prima facie* case of tortious interference with reasonably expected future contract rights would threaten disclosure of state secrets); [12] *Halkin (II)*, 690 F.2d at 998–99 (upholding dismissal because plaintiffs could not establish standing without use of privileged information that would indicate whether plaintiffs' communications were intercepted by the government).

The *Fitzgerald* court found that the assertion of the state secrets privilege required a dismissal of that case. *Fitzgerald* involved a scientist who claimed he was libelled by an article which stated that he personally profited from the sale of classified military technology. *Fitzgerald*, 776 F.2d at 1237. In his suit against the defendant magazine, Fitzgerald intended to call expert witnesses to testify that his marketing brochures did not contain classified information. *Id.* at 1242. At least one of the witnesses, however, as well as Fitzgerald personally, had knowledge of classified military secrets that were relevant to the subject of the litigation. *Id.* The court found that the examination of these witnesses could result in probing dangerously close to the state secrets and could compromise national security even if a state secret was not directly disclosed. *Id.* at 1243. The court found that "the very subject of this litigation is itself a state secret." *Id.*

This analysis is persuasive in the present case. The state secret that must be protected is the existence of any relationship between the CIA and ATC or FNB. Plaintiff contends that even if the state secrets privilege is applicable, the case should be allowed to continue based on circumstantial evidence of a CIA role (*Amici* at 11).

Plaintiff asserts that he does not have to prove that the CIA was associated with ATC or FNB. In order to prove his case against the bank, plaintiff claims that he merely has to establish that bank officials told him that the CIA controlled ATC. (*Id.*).

Plaintiff's scenario, however, is unworkable. In *Farnsworth*, the Fourth Circuit, sitting *en banc*, noted that plaintiff's counsel had not seen the *in camera* affidavit of the Secretary of the Navy. *Farnsworth*, 635 F.2d at 281. The assertion of the state secrets privilege had been upheld but counsel was unaware of the full scope of information determined to be state secrets. *Id.* The court, in upholding dismissal of the complaint, discussed the practical effect of letting the case continue:

> Information within the possession of the parties on the periphery of the suppression order would not readily be recognized by counsel, unaware of the specific contents of the affidavit, as being secret or as clearly having been suppressed by the general order of the district court. In an attempt to make out a prima facie case during actual trial, plaintiff and its lawyer would have every incentive to probe as close to the core secrets as the trial judge would permit. Such probing in open court would inevitably be revealing.

*Id.* In this case, once plaintiff alleges that FNB officials told him that the CIA was involved in ATC, the bank officials and ATC would have to respond in order to defend themselves. Their response would go to the heart of the state secrets that must be protected.

■ Plaintiff also has filed a motion pursuant to Local Rule 104.1, requesting leave to file in excess of thirty interrogatories. (Paper No. 70). In his motion, Mr. Maxwell states that the interrogatories are to be served on the defendant trustees of ATC. Maxwell asserts that he needs more than thirty interrogatories in order to com-

---

**12.** Judge Phillips in *Farnsworth* proposed that a district court also be permitted to dismiss a complaint if a defendant "cannot fairly present a good faith, colorable affirmative defense, or fairly rebut the plaintiff's *prima facie* case, because of the privilege." 635 F.2d at 280. *See also In Re U.S.*, 872 F.2d at 476.

prehensively inquire into the legality of various ATC transactions. Maxwell also contends that ATC's responses to the interrogatories are necessary for the court to determine whether the United States has properly asserted the state secrets privilege.

ATC's responses to the interrogatories would not assist the Court in assessing the assertion of the privilege in this case. As noted above, I have reviewed *in camera* the government's classified affidavit. Upon my request, an additional classified affidavit was submitted. These materials adequately addressed the information necessary to assess the government's claim of privilege.

Mr. Maxwell is not entitled to discover this information for the same reasons that the United States' protective order should be granted. The proposed interrogatories extensively inquire into seven ATC transactions. (Plf. motion; Exhibit 1). The interrogatories request specific information regarding the subject of shipments. They also call for the disclosure of government authorization for the transactions, including any communications between the CIA, the President and Congressional intelligence committees.

The responses to these interrogatories would relate directly to the existence of a relationship between the CIA and ATC or FNB. *In camera* review of classified information supports the finding that the United States' assertion of the state secrets privilege must be sustained to prevent the disclosures called for by plaintiff's interrogatories.

## Conclusion

After *in camera* review of the classified materials submitted by the government, and consideration of all the parties' submissions, I find the United States has shown a reasonable danger that disclosure of information concerning the existence of a relationship between the CIA and ATC or FNB would harm national interests, including intelligence-gathering methods and capabilities, and relations with foreign governments.

For the reasons set forth above, it is hereby recommended that:

(1) the United States' motion for a protective order (Paper No. 62) be GRANTED;

(2) Mr. Maxwell be precluded from seeking or obtaining any discovery that relates to his allegations of covert relationships between the Central Intelligence Agency ("CIA") and either defendant First National Bank of Maryland ("FNB") or defendant Associated Traders Corp. ("ATC"); and

(3) Mr. Maxwell be precluded from offering in support of the amended complaint in this case, any evidence that would tend to confirm or deny the alleged connection between the CIA and defendants FNB and ATC; and

(4) plaintiff's motion to enforce the Court's order of July 19, 1990, and motion for sanctions (Paper No. 57) be DENIED; and

(5) the United States' motion to stay discovery (Paper No. 58) be DENIED as moot; and

(6) Public Citizen and National Security Archive's motion for leave to file a brief as *amici curiae* (Paper No. 66) be GRANTED; and

(7) plaintiff's motion for leave to file in excess of thirty interrogatories (Paper No. 70) be DENIED; and

(8) plaintiff's motion to defer ruling on United States' motion for a protective order until completion of relevant discovery (Paper No. 71) be DENIED; and

(9) defendants', trustees of ATC, motion for protective order (Paper No. 72) be DENIED as moot; and

(10) the United States' motion to quash subpoena and stay further discovery (Paper No. 74) be DENIED as moot; and

(11) defendant FNB's motion for enlargement of time to respond further to first amended complaint (Paper No. 78) be GRANTED; and

(12) defendant FNB shall have until October 31, 1991 to file an additional response to the first amended complaint; and

(13) defendant FNB's motion for a protective order (Paper No. 79) be DENIED as moot; and

(14) defendants', trustees of ATC, request for leave of court for an extension of time in which to answer the amended complaint (Paper No. 80) be GRANTED; and

(15) defendants, trustees of ATC, shall have until October 31, 1991 to file an answer or otherwise respond to the amended complaint.