**William C. BLACK, Jr., Plaintiff,**

v.

**UNITED STATES of America, et al., Defendants.**

Civ. No. 3–92–628.

United States District Court,
D. Minnesota,
Third Division.

April 18, 1994.

**1132**

Clinton Collins, Jr., Minneapolis, Minnesota, for plaintiff.

Gordon W. Daiger and Matthew T. Fricker, United States Department of Justice, Washington, DC, for defendant United States of America.

## MEMORANDUM OPINION AND ORDER

KYLE, District Judge.

### Introduction

Plaintiff William C. Black, Jr. commenced this action against the United States of America and several unknown individuals who are alleged to have been officials of the Federal Bureau of Investigation ("FBI"), Central Intelligence Agency ("CIA"), and Department of State ("State Department"); Black alleges that the United States is liable under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2674 (1988), for the intentional infliction of emotional distress occasioned by the individual defendants. He further alleges that the individual defendants are liable for injuries caused by their having deprived him of his rights under the Fourth Amendment to the United States Constitution. Before the Court is the defendant United States' Motion, pursuant to Fed. R.Civ.P. 12(c), for Judgment on the Pleadings; the United States contends that the "state secrets" privilege applies here and requires that this action be dismissed without further litigation.

### Background

The essential facts underlying this action are set forth in the Court's April 2, 1993 Memorandum Opinion and Order ("First Order") in which the Court dismissed Black's FTCA claims against the United States for negligence and assault and battery.[1] On April 27, 1993 Black filed an Amended Complaint alleging a FTCA claim for intentional infliction of emotional distress (Count I) and a *Bivens*[2] style claim for violations of his Fourth Amendment rights (Count II). Although the causes of action alleged in the Amended Complaint differ from those alleged in the Complaint, the factual allegations contained in both pleadings are substantially identical; hence, they will not be repeated here.

Upon Black filing his Amended Complaint, the United States sought dismissal of this

---

1. The Court concluded that Black's negligence claim should be dismissed because Minnesota law did not provide a legal basis for such a claim. *See* First Order, at 11–12. Black's assault and battery claim was dismissed as barred by the two-year statute of limitations on FTCA claims contained in 28 U.S.C. § 2401(b). *Id.* at 17–18. In addition, the Court ordered Black to file an Amended Complaint alleging facts supporting his claim of intentional infliction of emotional distress. *Id.* at 19.

2. *Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). In *Bivens,* the Supreme Court held that damages may be awarded where federal officers knowingly violate an individual's Fourth Amendment rights, if (1) the individual has no other remedy, and (2) there is no explicit congressional declaration that persons injured by a federal officer's violation of the Constitution may not recover money damages.

action under Fed.R.Civ.P. 12(b)(6), relying on the "state secrets" privilege, which was asserted by R. James Woolsey, Director of Central Intelligence, in his public record declaration dated August 4, 1993 ("Woolsey Declaration") (Doc. No. 39). For reasons unrelated to the instant motion, the Court directed the United States to file an Answer to the Amended Complaint. Upon filing its Answer, the United States brought the instant motion, once again asserting that dismissal was warranted under the state secrets privilege.

**Discussion**

**I. Applicability of the State Secrets Privilege**

■ The state secrets privilege, first recognized by the Supreme Court in *United States v. Reynolds,* 345 U.S. 1, 73 S.Ct. 528, 97 L.Ed. 727 (1953), is a common law evidentiary privilege that protects information from discovery when disclosure "would be inimical to the national security." *In re United States,* 872 F.2d 472, 474 (D.C.Cir.), *cert dismiss sub nom. United States v. Albertson,* 493 U.S. 960, 110 S.Ct. 398, 107 L.Ed.2d 365 (1989). Where applicable, the privilege is clear and absolute, and no public or private interest, even the most compelling need for the information, can require disclosure of information subject to the privilege. *Reynolds,* 345 U.S. at 11, 73 S.Ct. at 533; *Ellsberg v. Mitchell,* 709 F.2d 51, 57 (D.C.Cir.1983), *cert. denied sub nom. Russo v. Mitchell,* 465 U.S. 1038, 104 S.Ct. 1316, 79 L.Ed.2d 712 (1984).[3]

■ Invoking the privilege requires, at a minimum, "a formal claim of privilege, lodged by the head of the department which has control over the matter, after actual personal consideration by that officer." *Reyn-*

olds, 345 U.S. at 8, 73 S.Ct. at 532. Merely complying with the formal requirements, however, is not sufficient to warrant a district court upholding the assertion of the privilege: "[t]o some degree at least, the validity of the government's assertion must be judicially assessed," *Molerio v. Federal Bureau of Investigation,* 749 F.2d 815, 822 (D.C.Cir.1984), in order that "[j]udicial control over the evidence in a case [is not] abdicated to the caprice of executive officers." *Reynolds,* 345 U.S. at 9–10, 73 S.Ct. at 532–33. The district court, therefore, must determine whether the circumstances are appropriate for allowing the privilege to be claimed; however, that inquiry must be conducted with care, "so as not to 'force disclosure of the very thing the privilege is designed to protect.'" *In re United States,* 872 F.2d at 475 (quoting *Reynolds,* 345 U.S. at 8, 73 S.Ct. at 532 (footnote omitted)). Accordingly, "[t]o properly fulfill its obligations, while according the 'utmost deference' to the executive's expertise in assessing privilege upon grounds of military or diplomatic security, a court must uphold the privilege if the government shows that the information poses a *reasonable danger* to secrets of state."[4] *In re United States,* 872 F.2d at 475 (citations omitted).

The United States, through the Woolsey Declaration, complied with the formal requirements set forth in *Reynolds.* The Woolsey Declaration states that Director Woolsey is

asserting a formal claim of privilege ... based upon [his] personal knowledge, upon information provided to [him] in [his] official capacity by personnel of the United States government who are knowledgeable about the facts covered by the declaration, and upon [his] personal consideration of

---

**3.** The plaintiff's need for the information, however, is relevant as a factor influencing how far the district court should probe in satisfying for itself that the circumstances are appropriate for invoking the privilege, *Northrop Corp. v. McDonnell Douglas Corp.,* 751 F.2d 395, 400 (D.C.Cir.1984); the more compelling the need, the more searching the court's inquiry.

**4.** Determining whether information falls within or without the privilege is made more difficult by

the increasingly sophisticated technology and methods available in the foreign intelligence community. *Halkin v. Helms,* 598 F.2d 1, 8 (D.C.Cir.1978) ("*Halkin I* "). Thus, as the District of Columbia Circuit noted in *In re United States,* a court should uphold the privilege for "information that standing alone may seem harmless, but that together with other information poses a reasonable danger of divulging too much to a 'sophisticated intelligence analyst.'" *In re United States,* 872 F.2d at 475 (quoting *Halkin I,* 598 F.2d at 10).

the information that is the subject of this claim of privilege. Woolsey Dec. ¶ 3. As asserted, the privilege would extend to (1) confirming or denying (a) the identities of the government individuals and entities allegedly involved in the actions detailed in the Amended Complaint, (b) the nature and purposes of the contacts between Black and any government agents or entities, and (c) the locations of those contacts, *id.* ¶ 5, or (2) answering discovery requests requiring disclosure of that information. *Id.* ¶ 4. Along with the Woolsey Declaration, the United States submitted declarations in support of Director Woolsey's invocation of the privilege;[5] they were reviewed by the Court on an *ex parte in camera* basis.[6]

▮ After reviewing the Woolsey Declaration and the *ex parte in camera* declarations, the Court holds that Director Woolsey properly invoked the state secrets privilege, since disclosure of information concerning the identities of government agents, the nature and purposes of their contacts, if any, with Black, or the locations of those contacts would pose a "reasonable danger" to the United States' intelligence-gathering capabilities and diplomatic relations. *See Zuckerbraun v. General Dynamics Corp.,* 935 F.2d 544, 547 (2d Cir.1991). Specifically, confirming or denying Black's allegations that he was contacted by agents of the CIA would provide foreign intelligence analysts with information concerning this nation's intelligence priorities and procedures. *Halkin v. Helms,* 690 F.2d 977, 993 (D.C.Cir.1982) (*"Halkin II "*). In addition, the government's intelligence relationships with other countries could be put at risk, either by requiring the United States to confirm or deny that it (a) conducts intelligence operations in those countries, and (b) has targeted locations in those countries as sources of intelligence. *Id.* The same conclusion holds for requiring the United States to release information concerning those topics during discovery—indeed, discovery would present even greater threats to the government's intelligence activities, since discovery would require the government to disclose *specific facts* concerning those subjects. The Court, therefore, holds that information concerning the identities of any government agents who may have contacted Black, the nature and purposes of those contacts, and the locations of those contacts are *absolutely* privileged from confirmation or denial in a responsive pleading and discovery.[7]

## II. Effect of the Privilege on this Litigation

### A. The Standard of Decision

▮ The United States contends that judgment on the pleadings is appropriate because the state secrets privilege presents

---

5. As will be discussed below, the information subject to the privilege is central to Black's claims; hence, his need for the information is compelling. Under such circumstances, the Woolsey Declaration, standing alone, was insufficient to support upholding the privilege; thus, the Court directed the United States to submit the declarations for the Court's review. *See Ellsberg,* 709 F.2d at 58–59 and nn. 37–38.

6. The Court declined to adopt Black's assertion that his counsel, a legal officer in the Minnesota Air National Guard, has a security clearance sufficient to permit him to review the proffered declarations. *Ellsberg,* 709 F.2d at 61 (a trial judge should not permit a party opposing the privilege to participate in an *in camera* examination of putatively privileged material).

7. The Court rejects Black's assertions that the privilege should not be upheld because it (a) has been waived by prior disclosure of Director Woolsey's Oath of Office or any other information under the Freedom of Information Act, and (b) should be narrowly construed when an intentional tort is alleged. *See In re Under Seal,* 945 F.2d 1285 (4th Cir.1991) (claim for malicious interference with business); *Farnsworth Cannon, Inc. v. Grimes,* 635 F.2d 268, 281 (4th Cir.1980) (en banc) (claim for tortious interference with contract), *prior panel decision,* 635 F.2d 268 (4th Cir.); *Maxwell v. First Nat'l Bank of Maryland,* 143 F.R.D. 590 (D.Md.1992) (claim for intentional infliction of emotional distress), *aff'd* 998 F.2d 1009 (4th Cir.1993) (table), *cert. denied,* — U.S. —, 114 S.Ct. 920, 127 L.Ed.2d 214 (1994). The Court also rejects Black's assertion that the privilege is not available to shield the government from liability for illegal acts. Whatever the truth of that statement, the government's submissions in support of the privilege establish that it is being asserted in the interest of national security, and not to hide illegal acts. Moreover, it is accepted that a successful assertion of the privilege may defeat "worthy claims for violations of rights that would otherwise be proved." *In re United States,* 872 F.2d 472, 476 (D.C.Cir.1989).

an insuperable bar to this litigation. Ordinarily, a motion for judgment on the pleadings is determined under the same standard applied to motions, pursuant to Fed.R.Civ.P. 12(b)(6), to dismiss for failure to state a claim. *See National Car Rental System, Inc. v. Computer Assoc. Int'l, Inc.,* 991 F.2d 426, 428 (8th Cir.1993). The instant motion, however, has required the court to consider matters outside the pleadings, namely, Director Woolsey's on-the-record Declaration (Doc. No. 39), the *ex parte in camera* submissions offered in support thereof, and Black's Exhibit in opposition to the motion; hence, the government's rule 12(c) will be construed as one for summary judgment under Fed.R.Civ.P. 56.[8] *See* Fed.R.Civ.P. 12(c). By submitting their extra-pleadings matters, the parties had constructive notice of the court's intention to consider matters outside the pleadings. *See Goetz v. Tordoff,* App. No. 93–1842, slip op., at 3, 1994 WL 124157, at *1 (8th Cir. Apr. 13, 1994).

> Under Rule 56:
> [summary] judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c). Summary judgment is to be granted only where the evidence is such that no reasonable jury could return a verdict for the non-moving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). In determining whether summary judgment is appropriate, the evidence offered by the non-moving party is to be believed and all justifiable inferences therefrom are to be drawn in a light most favorable to that party. *Matsushita Elec. Indus. v. Zenith Radio,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1357, 89 L.Ed.2d 538 (1986); *Liberty,* 477 U.S. at 255, 106 S.Ct. at 2513; *Trnka v. Elanco Prod.,* 709 F.2d 1223, 1225 (8th Cir. 1983).

### B. When the Privilege Warrants Dismissal

Once successfully invoked, the effect of the privilege is to completely remove the evidence from the case, *Ellsberg v. Mitchell,* 709 F.2d 51, 65 (D.C.Cir.) *cert denied sub nom. Russo v. Mitchell,* 465 U.S. 1038, 104 S.Ct. 1316, 79 L.Ed.2d 712 (1984); as a result, the district court must consider whether and how the case may proceed in light of the excluded evidence. *Fitzgerald v. Penthouse Int'l, Ltd.,* 776 F.2d 1236, 1243 (4th Cir.1985). If the plaintiff is, or will be, unable to establish a prima facie case without the privileged information, or if the privileged information is "so central to the subject matter of the litigation that any attempt to proceed will threaten disclosure of the privileged matters," dismissal or summary judgment is appropriate. *Id.* (citation omitted); *see Bowles v. United States,* 950 F.2d 154, 156 (4th Cir.1991) (per curiam). Similarly, if the information is essential to the defense, such that upholding the privilege will preclude the government from asserting a valid defense to the claim, summary judgment against the plaintiff may be appropriate.[9] *In re United States,* 872 F.2d at 476. In every case, however, dismissal is "draconian," *id.;* thus, it should be invoked "[o]nly when no amount of effort and care on the part of the court and the parties will safeguard [the] privileged material." *Fitzgerald,* 776 F.2d at 1243–44; *see Bowles,* 950 F.2d at 156.

In this case, the question thus becomes, in light of the Court's determination that (a) the United States may not be required to confirm or deny Black's allegations concerning the identities of the persons and government

---

8. Moreover, the summary judgment standard has particular utility in evaluating the effect of the privilege at issue in this case. *See Zuckerbraun v. General Dynamics Corp.,* 935 F.2d 544, 547 (2d Cir.1991).

9. Although the government relies on this ground in seeking dismissal of Black's FTCA claim (Reply Mem.Supp.Summ.J., at 8–9.), it has not identified any privileged facts that constitute a defense to that claim. As a result, there is no basis for concluding that upholding the privilege precludes the government from asserting a valid defense. *Cf. Molerio v. F.B.I.,* 749 F.2d 815, 825 (D.C.Cir.1984) (privileged facts submitted by government established a defense to plaintiff's claim).

entities with whom he allegedly had contact, the nature and purposes of those contacts, and the locations of those contacts, and (b) Black will not have access to that information through discovery, can Black's claims against the defendants proceed in light of the privilege?

### C. Black's FTCA Claim

 Black's FTCA claim in Count I must be dismissed for two reasons. First, establishing a right to relief under the FTCA, requires Black to demonstrate that *employees* of the federal government engaged in intentional infliction of emotional distress [10] while acting within the scope of their office or employment. 28 U.S.C. § 1346(b). Since the identity of those employees is privileged, Black will not have access to facts necessary to establish a genuine issue of material fact as to whether the alleged wrongdoers were, in fact, employees or agents of the government, nor has Black asserted that he can present a prima facie case even if the information were determined to be privileged.[11]

Second, and more importantly, dismissal is warranted because the factual allegations in the Amended Complaint are so tied to the privileged information that further litigation will constitute an undue threat that privileged information will be disclosed. In his Amended Complaint, Black alleges numerous contacts with agents of the government, including the CIA, throughout 1987 and early 1988, the genesis of which was his contact with a Soviet mathematician during a 1986 teaching assignment in Switzerland. Amended Complaint, ¶¶ 14–20. Black further alleges that the harassment and "psychological attacks" constituting intentional infliction of emotional distress commenced *after* he returned from Switzerland in October 1987 and failed to contact the government officials with whom he had been dealing. *Id.* ¶ 21. These portions of the Amended Complaint demonstrate that litigating Black's FTCA claim necessarily will involve attempts to prove an ongoing series of contacts between Black and government agents, the exact information that has been determined to be privileged. As a result, no measure of security or diligence could ensure that information falling within the privilege will not be disclosed; in such circumstances, dismissal is warranted. *See Farnsworth Cannon, Inc. v. Grimes,* 635 F.2d 268, 281 (4th Cir.1980) (en banc), *prior panel decision,* 635 F.2d 268 (4th Cir.).[12]

### D. Black's Bivens Claim

In Count II, Black alleges that certain agents [13] of the State Department, CIA, and FBI violated his constitutional rights under the Fourth Amendment and that they are liable for injuries arising from those violations. The United States is not a named defendant in Count II and the instant motion does not seek dismissal of Count II. Accordingly, as to Count II, the United States is invoking the state secrets privilege as a non-party.

> When the state secrets privilege is validly asserted, the result is unfairness to individual litigants—through the loss of important evidence or dismissal of a case—in order to protect a greater public value.... [w]here, as here, the very question upon which the case turns is itself a state secret, the litigant will often find himself without a forum to redress his grievances. The burden of protection of a public value falls upon him alone.
> 776 F.2d at 1238–39 n. 3.

---

10. Under Minnesota law, the tort of intentional infliction of emotional distress requires the plaintiff to prove that the defendant intentionally or recklessly engaged in extreme and outrageous conduct which caused the plaintiff to suffer severe emotional distress. *See Hubbard v. UPI,* 330 N.W.2d 428, 438–39 (Minn.1983).

11. Black did cite to the Court decisions in which the litigation continued despite the privilege, including cases in which the court conducted an *in camera* trial. After reviewing those decisions, the Court concludes that an *in camera* trial is not a reasonable alternative in this case.

12. Black contests the hardship and unfairness that is worked by upholding the state secrets privilege in this case and dismissing his FTCA claim; however, as the Fourth Circuit stated in *Fitzgerald:*

13. The individual defendants are "Olin Peter Nielson" and John or Jane Does one through ten, unknown officials of the CIA, FBI, the Department of Defense and the Department of State. Amended Complaint, ¶ 1. The United States admits that Olin Peter Nielson is an alias for a former employee of the CIA. Answer, ¶ 6.

The procedural posture of Count II notwithstanding, the Court concludes that Black's *Bivens* claim must be dismissed. In circumstances where the privilege is upheld, dismissal may be appropriate even though the government is not a named party to the cause of action. *See Fitzgerald v. Penthouse, Int'l, Ltd.,* 776 F.2d 1236, 1241–42 (4th Cir. 1985); *Farnsworth Cannon,* 635 F.2d at 281. In this case, Black's *Bivens* claim is based on allegations that his Fourth Amendment rights were violated by government agents and that the violations occurred as a result of his intelligence contacts with the CIA and FBI, i.e., his contacts with government agents precipitated the violations.[14] Given this factual premise, information concerning the identity of the alleged wrongdoers, their relationship to the government, and their contacts with Black are essential to his *Bivens* claim. As that information falls within the scope of the state secrets privilege upheld herein, litigating Black's *Bivens* claim will present a continuing and substantial threat that privileged information will be disclosed. *See supra* Part II.B. Moreover, Black's inability to acquire information concerning (a) the identity of the alleged wrongdoers, and (b) the nature of their actions, precludes him from establishing a prima facie case of liability on his *Bivens* action.[15]

### Conclusion

Based upon the foregoing, and the records, files, and proceedings herein, including the briefs and arguments of counsel, **IT IS ORDERED** that the defendant United States of America's Motion for Judgment on the Pleadings (Doc. No. 62) is **GRANTED.** Plaintiff William C. Black Jr.'s claims against the defendants, as set out in Counts I and II of the Amended Complaint, are **DISMISSED WITH PREJUDICE.**

**14.** A *Bivens* claim seeks damages from "federal officials" where those officials violate "clearly established constitutional rights." *Arcoren v. Peters,* 811 F.2d 392, 393 (8th Cir.), *vacated on other grounds,* 829 F.2d 671 (8th Cir.1987) (en banc), *cert. denied,* 485 U.S. 987, 108 S.Ct. 1290, 99 L.Ed.2d 500 (1988). Accordingly, the plaintiff in a *Bivens* action must allege and establish that (1) the alleged wrongdoers were, in fact, federal

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

agents, and (2) they took actions that violated the plaintiff's constitutional rights.

**15.** Dismissal is also appropriate under Fed. R.Civ.P. 12(b)(5) because the identities of the individual defendants are privileged; as a result, Black has not and cannot perfect service on those defendants.