62 F.3d 1115
 William C. BLACK, Jr., Ph.D., Appellant,
v.
UNITED STATES of America; Central Intelligence Agency;
Federal Bureau of Investigation; Olin Peter Nielson; John
Does; one through ten, unknown officials of the Central
Intelligence Agency, Federal Bureau of Investigation, the
Department of Defense, and the Department of State, Appellees.
 No. 94-2261.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Feb. 13, 1995.
Decided Aug. 15, 1995.
 
 Clinton C. Collins, Jr., Minneapolis, MN, argued, for appellant.
 Freddi Lipstein, Washington, DC, argued, for appellee. Frank W. Hunger, Asst. Atty. Gen., David Lee Lillihaug, U.S. Atty., and Leonard Schaitman, Washington, DC, on the brief.
 Before BOWMAN, BEAM, and HANSEN, Circuit Judges.
 BOWMAN, Circuit Judge.
 
 
 1
 On the basis of the government's assertion of the state secrets privilege, the District Court[1] dismissed the plaintiff's Federal Tort Claims Act (FTCA) and Bivens claims. The plaintiff, William C. Black, Jr., appeals. We affirm.
 
 I.
 
 2
 Black is an electrical engineer who possessed government security clearances and worked on military-related projects for various defense contractors. In November 1986 he lectured at the Swiss Federal Institute of Technology in Zurich where a Soviet mathematician, his office mate, allegedly asked him intrusive and suspicious questions. This contact was reported by Black to the United States Consulate and allegedly resulted in several meetings between him and embassy personnel.
 
 
 3
 In July 1987, after his return to the United States, Black states that he met with an individual operating under an alias who identified himself as a CIA employee ("Nielson") and who questioned Black about his contact with the Soviet national. In August, Black was informed that his security clearance had been "unplugged" due to inactivity, and he did not transmit any information about the mathematician or Black's connection with the Institute after a September trip to Switzerland. Black claims that, beginning in October, he "became the focus of a campaign of harassment and psychological attacks. Unknown people entered his apartment and rearranged things; he was followed; he received many strange phone calls; and he was repeatedly subjected to the sound of rolling dice from a neighboring apartment when he entered or left his home." Brief of Appellant at 3. Nor did Black's alleged tormentors content themselves with "shaking the bones"; "[h]is home and car were broken into. He received calls indicating his home was bugged. He was drugged in his own home with a substance that produced terrifying hallucinations." Id. at 4.[2] Black claims that he was terrified, angry, hurt, and drawn to seek psychiatric counseling by this abuse. He charged the United States, the CIA, the FBI, the Department of Defense, the Department of State, Nielson, and ten John and Jane Does (alleged to be employees of the CIA, the FBI, the Department of Justice, and the Department of Defense) with violations of his Fourth Amendment rights. Black also alleged a right to recover under the FTCA for negligence (breach of a duty owed to obtain informed consent before using him as an informant or a "subject of experimental research," Complaint p 41, No. 3-92-CV-628 (Sept. 15, 1992)), for assault and battery, and for intentional infliction of emotional distress.
 
 
 4
 On motion by the government seeking dismissal of the FTCA claims, the District Court dismissed Black's claims of negligence and assault and battery, allowing the claim for intentional infliction of emotional distress to proceed and directing Black to file an amended complaint with respect to this claim. Black's Fourth Amendment claim, brought under the doctrine of Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 389, 91 S.Ct. 1999, 2001, 29 L.Ed.2d 619 (1971) (holding unreasonable search and seizure by federal agent under color of authority gives rise to Fourth Amendment cause of action for damages), was unaffected and was reasserted in Black's amended complaint. In response to the amended complaint, the government filed a public declaration by R. James Woolsey, Director of the CIA, asserting a formal claim of state secrets privilege, exempting from disclosure information that would confirm or deny Black's alleged contacts with government officers, including identities, nature and purpose of possible contacts, and locations. The Director further proffered in camera ex parte declarations that elaborated on the reasons for assertion of the privilege. After an in camera review of the classified materials, and based on these materials and the Director's public statement, the court held that the state secrets privilege had been properly asserted. Specifically the court noted
 
 
 5
 that Director Woolsey properly invoked the state secrets privilege, since disclosure of information concerning the identities of government agents, the nature and purposes of their contacts, if any, with Black, or the locations of those contacts would pose a "reasonable danger" to the United States' intelligence-gathering capabilities and diplomatic relations. See Zuckerbraun v. General Dynamics Corp., 935 F.2d 544, 547 (2d Cir.1991). Specifically, confirming or denying Black's allegations that he was contacted by agents of the CIA would provide foreign intelligence analysts with information concerning this nation's intelligence priorities and procedures. Halkin v. Helms, 690 F.2d 977, 993 (D.C.Cir.1982) ("Halkin II "). In addition, the government's intelligence relationships with other countries could be put at risk, either by requiring the United States to confirm or deny that it (a) conducts intelligence operations in those countries, and (b) has targeted locations in those countries as sources of intelligence. Id. The same conclusion holds for requiring the United States to release information concerning those topics during discovery--indeed, discovery would present even greater threats to the government's intelligence activities, since discovery would require the government to disclose specific facts concerning those subjects.
 
 
 6
 Black v. United States, Civ. No. 3-92-628, 1994 WL 848115, Memorandum Opinion and Order at 6-7 (D.Minn. April 18, 1994).
 
 
 7
 As a consequence, the court also held that Black's remaining FTCA claim must be dismissed because, absent the prohibited information, Black would not be able to establish whether the perpetrators of the alleged acts were agents or employees of the government. Further, proof of "the factual allegations in the Amended Complaint are so tied to the privileged information that further litigation will constitute an undue threat that privileged information will be disclosed." Black v. United States, Civ. No. 3-92-628, Memorandum Opinion and Order at 11 (D.Minn. April 18, 1994). Similarly, the court held that Black's Bivens claim must be dismissed because "information concerning the identity of the alleged wrongdoers, their relationship to the government, and their contacts with Black are essential" to the claim, and such information "falls within the scope of the state secrets privilege upheld herein." Id. at 13. The protected information precludes Black from establishing a prima facie Bivens claim and, as under the FTCA claim, continued litigation carries with it the risk that privileged information might be disclosed.[3] The court dismissed with prejudice Black's claims as set forth in the amended complaint. He appeals.
 
 
 8
 Black argues that the trial court erred 1) in granting the government's motion to dismiss, because the assertion of evidentiary state secrets privilege was overbroad, 2) in failing to recognize that the defendants were acting beyond their legal and constitutional authority and thus lacked the power to validly claim the state secrets privilege, and 3) in refusing to accept separate claims against all potential government agencies.
 
 II.
 
 9
 Black's first argument is that the trial court erred in granting the government's motion to dismiss, because the claim of evidentiary state secrets was overbroad. The state secrets privilege is defined in United States v. Reynolds, 345 U.S. 1, 7-8, 73 S.Ct. 528, 532, 97 L.Ed. 727 (1953) (footnotes omitted), as protecting military and state secrets.
 
 
 10
 [T]he principles which control the application of the privilege emerge quite clearly from the available precedents. The privilege belongs to the Government and must be asserted by it; it can neither be claimed nor waived by a private party. It is not to be lightly invoked. There must be a formal claim of privilege, lodged by the head of the department which has control over the matter, after actual personal consideration by that officer. The court itself must determine whether the circumstances are appropriate for the claim of privilege, and yet do so without forcing a disclosure of the very thing the privilege is designed to protect.
 
 
 11
 The state secrets privilege has been held to apply to information that would result in "impairment of the nation's defense capabilities, disclosure of intelligence-gathering methods or capabilities, and disruption of diplomatic relations with foreign governments," Ellsberg v. Mitchell, 709 F.2d 51, 57 (D.C.Cir.1983) (footnotes omitted), cert. denied, 465 U.S. 1038, 104 S.Ct. 1316, 79 L.Ed.2d 712 (1984), or where disclosure "would be inimical to national security," Zuckerbraun v. General Dynamics Corp., 935 F.2d 544, 546 (2d Cir.1991). "Although the term 'military or state secrets' is amorphous in nature, it should be defined in the light of 'reason and experience,' much in the same way that the term 'national defense' has been defined ... [as] a 'generic concept of broad connotations, referring to the military and naval establishments and the related activities of national preparedness.' " Jabara v. Kelley, 75 F.R.D. 475, 483 n. 25 (E.D.Mich.1977) (quoting Gorin v. United States, 312 U.S. 19, 28, 61 S.Ct. 429, 434, 85 L.Ed. 488 (1941)). It is not proper to characterize this, as does Black, as some "creature" of the Cold War; the privilege preceded that state of affairs,[4] and having an independent existence, cannot be held to have terminated with the (current, and perhaps temporary) demise of superpower rivalry. Indeed, it could be argued that the absence of a relatively stable world order of the sort that prevailed during the Cold War makes the availability of the privilege in appropriate cases all the more important.
 
 
 12
 While the state secrets privilege is not to be lightly invoked, a process safeguarded by the Supreme Court's requirement that the head of the relevant government department make a formal claim after personal perusal of the matter, see Reynolds, 345 U.S. at 7-8, 73 S.Ct. at 532, nevertheless "the court must accord the ' "utmost deference" ' to the executive's determination of the impact of disclosure on military or diplomatic security."[5] Zuckerbraun, 935 F.2d at 547 (citations to quoted cases omitted). Even the most compelling need cannot force a disclosure of the very thing the privilege is invoked to protect. See Reynolds, 345 U.S. at 8, 73 S.Ct. at 532. Care in protecting state secrets is necessary not only during a court's review of the evidence, but in its subsequent treatment of the question in any holding; a properly phrased opinion should not strip the veil from state secrets even if ambiguity results in a loss of focus and clarity. Such proceedings, "involving delicate and sensitive intelligence communications," should be distinguished from more ordinary forms of discovery, such as Freedom of Information Act (FOIA) requests. North Dakota ex rel. Olson v. Andrus, 581 F.2d 177, 182 n. 9 (8th Cir.1978).
 
 
 13
 Assessment of a claim of state secrets privilege may require an in camera ex parte examination by the judge. See Ellsberg, 709 F.2d at 57 n. 31. Black's argument that such proceedings "are an inappropriate means to resolve disputed issues of privilege," Brief of Appellant at 19, is simply incorrect.[6] The lower court correctly employed such a procedure in reviewing the government's state secrets claim. See Black v. United States, Civ. No. 3-92-628, 1994 WL 848115, Memorandum Opinion and Order at 5-6, (D.Minn. April 18, 1994). Our independent in camera ex parte review of the government's state secrets claim similarly convinces us that it was not overbroad, and that the trial court did not err in granting the motion to dismiss. The information covered by the privilege is at the core of Black's claims, and we are satisfied that the litigation cannot be tailored to accommodate the loss of the privileged information.
 
 III.
 
 14
 Black's second argument is that the trial court failed to recognize that the defendants' ultra vires actions prevented them from validly claiming the state secrets privilege. Black claims that the CIA illegally performed domestic surveillance on him in contravention of 50 U.S.C. Sec. 403-3(d)(1) (Supp. V 1993), and he cites Birnbaum v. United States, 588 F.2d 319 (2d Cir.1978), and Weissman v. Central Intelligence Agency, 565 F.2d 692 (D.C.Cir.1977), as authority.[7] Weissman, a FOIA case, concerned "[a] full background check within the United States of a citizen who never had any relationship with the CIA." 565 F.2d at 696. In Birnbaum, the Second Circuit affirmed, with modification, judgment allowing damages for the CIA's unauthorized opening of letters. The court observed that
 
 
 15
 the CIA was not to become concerned with developing intelligence as to domestic or internal security matters, except "for protecting intelligence sources and methods from unauthorized disclosure." Sec. 102(d)(3), 50 U.S.C. Sec. 403(d)(3). The subject matter of the Agency's interest was to be foreign activity, not activity at home, and the Agency was not to have any "internal security functions." Sec. 102(d)(3), 50 U.S.C. Sec. 403(d)(3).
 
 
 16
 588 F.2d at 331 (footnote omitted). If Black is correct about CIA surveillance of him, and we assume arguendo that he is, his reported contact with a suspicious foreign national outside the United States places the matter in the arena of foreign activity and thus within the CIA's competence. Assuming, in the alternative, that the FBI was responsible for the surveillance Black alleges, no case has been made for ultra vires activity. It is equally possible, of course, that the crank calls, hallucinatory furniture, and elderly shadowers alleged by Black are products of a vivid scientific imagination. This Court has considered all these possibilities and has reviewed the available evidence, including the Director's in camera ex parte declarations. It is our conclusion that if any activities were conducted by the government in connection with Black, they were not ultra vires.
 
 IV.
 
 17
 Black's final contention is that the trial court erred in refusing to accept separate claims against all potential government agencies. This argument is somewhat difficult to fathom, but we need not and do not plumb its depths, for two reasons, either of which is sufficient. First, because of our holding affirming the District Court's dismissal of Black's claims in light of the government's assertion of the state secrets privilege, the issue is moot. Second, the issue relates to rulings made by the District Court in connection with Black's original complaint. Black's notice of appeal, however, refers only to the dismissal of the claims in his amended complaint. Thus the issue, even if it were not moot, would not be properly before us for review. See Berdella v. Delo, 972 F.2d 204, 207 (8th Cir.1992).
 
 V.
 
 18
 The judgment of the District Court is affirmed.
 
 
 
 [1]
 The Honorable Richard H. Kyle, United States District Judge for the District of Minnesota
 
 
 [2]
 Black alleges that this campaign of abuse also included "planting bugging devices in the form of filaments sewn into his carpet; ... setting off false fire alarms; spraying his furniture with a substance which caused plaintiff to suffer hallucinations upon contact; causing an elderly couple to follow him; and making deposits in one of his brokerage accounts in the amount of his hospital bill." Black v. United States, Civ. No. 3-92-628, Memorandum Opinion and Order at 3 (D.Minn. April 2, 1993)
 
 
 [3]
 The court refused to consider an in camera trial utilizing the privileged information
 
 
 [4]
 See Totten v. United States, 92 U.S. 105, 107, 23 L.Ed. 605 (1875); United States v. Burr, 25 F.Cas. 30, 37 (C.C.D.Va.1807) (No. 14,692d)
 
 
 [5]
 This is due at least in part to the difficulty in assessing what effect a particular disclosure will have on national security, particularly when such a determination is made by the uninitiated
 The significance of one item of information may frequently depend upon knowledge of many other items of information. What may seem trivial to the uninformed, may appear of great moment to one who has a broad view of the scene and may put the questioned item of information in its proper context. The courts, of course, are ill-equipped to become sufficiently steeped in foreign intelligence matters to serve effectively in the review of secrecy classifications in that area.
 Ellsberg v. Mitchell, 709 F.2d 51, 58 n. 31 (D.C.Cir.1983) (quoting United States v. Marchetti, 466 F.2d 1309, 1318 (4th Cir.), cert. denied, 409 U.S. 1063, 93 S.Ct. 553, 34 L.Ed.2d 516 (1972)), cert. denied, 465 U.S. 1038, 104 S.Ct. 1316, 79 L.Ed.2d 712 (1984).
 
 
 [6]
 In re Eisenberg, 654 F.2d 1107 (5th Cir.1981), which Black cites for this statement, actually reads: "It is settled that in camera proceedings are an appropriate means to resolve disputed issues of privilege." 654 F.2d at 1112 n. 7 (citing Kerr v. United States District Court, 426 U.S. 394, 96 S.Ct. 2119, 48 L.Ed.2d 725 (1976))
 
 
 [7]
 50 U.S.C. Sec. 403-3(d)(1) (Supp. V 1993) reads as follows:
 In the Director's capacity as head of the Central Intelligence Agency, the Director shall--
 (1) collect intelligence through human sources and by other appropriate means, except that the Agency shall have no police, subpoena, or law enforcement powers or internal security functions;
 ....
 In the cases cited, the provision referred to is 50 U.S.C. Sec. 403(d)(3) (1976), and reads as follows:
 For the purpose of coordinating the intelligence activities of the several Government departments and agencies in the interest of national security, it shall be the duty of the Agency, under the direction of the National Security Council--
 (3) to correlate and evaluate intelligence relating to the national security, and provide for the appropriate dissemination of such intelligence within the Government using where appropriate existing agencies and facilities: Provided, That the Agency shall have no police, subpena [sic], law-enforcement powers, or internal-security functions....