# United States Court of Appeals
## For the Eighth Circuit

_____

No. 16-3072
_____

In re: Missouri Department of Corrections

*Petitioner*

_____

Appeal from United States District Court
for the Western District of Missouri - Jefferson City

_____

Submitted: July 7, 2016
Filed: September 2, 2016
[Unpublished]

_____

Before SMITH, BOWMAN, and GRUENDER, Circuit Judges.

_____

PER CURIAM.

The Missouri Department of Corrections ("MDOC") filed petitions for writs of mandamus prohibiting the district court[1] from enforcing orders requiring MDOC to produce information in response to a subpoena by two Mississippi death-row inmates and to provide a detailed privilege log regarding that information. We deny MDOC's petition regarding production of the subpoenaed information and deny as moot its petition regarding production of the privilege log.

_____

[1] The Honorable Stephen R. Bough, United States District Judge for the Western District of Missouri.

Richard Jordan and Ricky Chase are Mississippi death-row inmates who Mississippi proposes to execute by the serial intravenous injection of three drugs: midazolam, vecuronium bromide, and potassium chloride. In a case presently pending in the United States District Court for the Southern District of Mississippi, these inmates are challenging this execution method as cruel and unusual punishment under the Eighth Amendment. After the court denied a motion to dismiss, the inmates served upon MDOC a third-party subpoena for documents and a Federal Rule of Civil Procedure ("FRCP") 30(b)(6) deposition notice seeking information regarding MDOC's use of pentobarbital in lethal injections, including the identities of MDOC's suppliers of pentobarbital.

MDOC filed a motion to quash the subpoena in the United States District Court for the Western District of Missouri. In support of this motion, it submitted the affidavit of MDOC Director George Lombardi, who explained that because MDOC's pentobarbital suppliers "require the assurance of confidentiality," producing the information sought by the inmates would result in the state no longer being able to obtain the drug for use in executions. In light of this risk, MDOC argued, the inmates' subpoena represented an undue burden under FRCP 45(d)(3)(A)(iv) and a violation of Missouri's right to sovereign immunity under the Eleventh Amendment. MDOC further contended that the inmates' discovery request required MDOC to disclose information protected by the state secrets privilege.

After considering MDOC's arguments, the district court ordered MDOC to provide Jordan and Chase with a more detailed privilege log. The court subsequently denied MDOC's motion to quash the inmates' subpoena, ordering MDOC to produce the majority of the information the inmates sought. MDOC has filed in this court petitions for a writ of mandamus to prevent the enforcement of these orders.

Extraordinary writs like mandamus are "useful 'safety valves' for promptly correcting serious errors," *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 111

-2-

(2009) (quoting *Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 868 (1994)), but "only exceptional circumstances amounting to a judicial usurpation of power or a clear abuse of discretion" will justify the invocation of the extraordinary remedy of mandamus. *Cheney v. U.S. Dist. Court*, 542 U.S. 367, 380 (2004) (internal citations and alterations omitted). To obtain a writ of mandamus, the petitioning party must satisfy two prerequisites: his entitlement to the writ must be "clear and indisputable," and he must have "no other adequate means to attain the relief he desires." *Id.* at 380–81. "[I]f the first two prerequisites have been met, the issuing court, in the exercise of its discretion, must be satisfied that the writ is appropriate under the circumstances." *Id.* at 381.

We address first MDOC's argument that the district court abused its discretion when it ruled that the inmates' subpoena does not impose on MDOC an undue burden under FRCP 45(d)(3)(A)(iv). This rule prohibits the discovery of information "where no need is shown, or compliance would be unduly burdensome, or where harm to the person from whom discovery is sought outweighs the need of the person seeking discovery of the information." *Miscellaneous Docket Matter No. 1 v. Miscellaneous Docket Matter No. 2*, 197 F.3d 922, 925 (8th Cir. 1999) (quoting *Micro Motion, Inc. v. Kane Steel Co.*, 894 F.2d 1318, 1323 (Fed. Cir. 1990)). MDOC argues that, in light of Director Lombardi's assertion that MDOC's pentobarbital suppliers have informed him that they will no longer provide the pentobarbital if their identities are revealed, disclosing this information would prevent the state from carrying out executions and would provide no support for the inmates' Eighth Amendment claim.

As the district court recognized, several factors undermine MDOC's argument regarding the likely consequences of disclosing the suppliers' identities. First, Director Lombardi's statement regarding the suppliers' intentions is hearsay, does not point to any specific agreement between MDOC and its suppliers, and is inherently speculative as to the future decisions of those suppliers. Thus, although the suppliers may have cautioned Lombardi against disclosing their identities, their actual response

to such disclosure remains a function of the various financial, political, and other factors the suppliers may consider when deciding whether to continue supplying pentobarbital to MDOC. Because of this uncertainty, we also reject MDOC's argument that, because MDOC's supplier would cease to provide pentobarbital to anyone upon disclosure of its identity, this information would provide no support to the inmates' Eighth Amendment claim, which requires them to identify an "*available* alternative method of execution." *See Glossip v. Gross*, 576 U.S. ---, 135 S. Ct. 2726, 2738 (2015) (emphasis added). We cannot infer from such a speculative prediction that the disclosed information would result in no support for the inmates' claim.

Even if MDOC's present sources stopped providing pentobarbital, Lombardi's affidavit fails to establish that MDOC would be unable to locate an alternative supplier or produce the drug on its own. Although Director Lombardi, in his original affidavit, averred that MDOC "searched extensively for suppliers of lethal chemicals" and that the only suppliers that MDOC "found" would require "the assurance of confidentiality," MDOC neither discloses how many suppliers it found nor demonstrates that it would be unable to find new suppliers of pentobarbital (or substitute lethal chemicals) if it were required to disclose the identities of its current suppliers. Moreover, as a Missouri state court recently observed, "The State of Missouri can, as proposed by [the Department's] own counsel, Attorney General Chris Koster, explore establishing its own laboratory to produce chemicals for use in lethal injection executions as an alternative to keeping the identity of the providers secret." *Guardian News & Media, LLC v. Missouri Dep't of Corr.*, No. 14AC-CC00251, at *6 (Mo. Cir. Ct. July 15, 2015). These possibilities further undermine MDOC's argument regarding the burdens of complying with the inmates' subpoena. Therefore, we cannot conclude that the district court clearly abused its discretion when it ruled that discovery of the suppliers' identities would not impose on MDOC an undue burden under FRCP 45(d)(3)(A)(iv).

-4-

We next consider MDOC's argument that the district court clearly abused its discretion when it ruled that sovereign immunity does not protect MDOC from having to comply with the inmates' discovery request. In *In re Missouri Department of Natural Resources*, we recognized that "[t]here is simply no authority for the position that the Eleventh Amendment shields government entities from discovery in federal court." 105 F.3d 434, 436 (8th Cir. 1997). Subsequently, in *Alltel Communications, LLC v. DeJordy*, we declined to decide whether sovereign immunity provided states with protection against "disruptive third-party subpoenas that would clearly be barred in a State's own courts." 675 F.3d 1100, 1104–05 (8th Cir. 2012). We again decline to reach that question here. The district court found that even if the Eleventh Amendment afforded such protection, MDOC had failed to demonstrate that disclosing the identity of Missouri's pentobarbital suppliers would be disruptive to the state's autonomy. Based on the record before us, we cannot conclude that this ruling represented a clear abuse of discretion.

For similar reasons, we cannot conclude that the district court clearly abused its discretion when it ruled that the information sought by the inmates is not protected by the state secrets privilege. The state secrets privilege is a federal common law evidentiary rule that protects "military and state secrets" from discovery. *See United States v. Reynolds*, 345 U.S. 1, 6–7 (1953) ("[T]he privilege against revealing military secrets [is] a privilege which is well established in the law of evidence."). We have previously recognized that the privilege applies in cases involving national security, diplomatic secrets, and military intelligence. *Black v. United States*, 62 F.3d 1115, 1118 (8th Cir. 1995). However, we have never recognized that state agencies can invoke the privilege in other types of cases. Therefore, we cannot say that the district court abused its discretion by refusing to apply the state secrets privilege.[2]

---

[2] Before the district court, MDOC also argued that Missouri Revised Statute § 546.720 creates a privilege against production in federal court. The district court ruled that the statute does not protect information regarding MDOC's suppliers. Because MDOC did not raise this argument in its petitions, we decline to address it.

Finally, we are not satisfied that MDOC has at its disposal "no other adequate means to attain the relief [it] desires." *See Cheney*, 542 U.S. at 380. MDOC has failed to demonstrate why its suppliers' concerns could not be alleviated through the district court's entering of a protective order requiring that the discovered identities remain confidential apart from their use in the inmates' Eighth Amendment suit. *See Kerr v. U.S. Dist. Court*, 426 U.S. 394, 405 (1976) (affirming denial of mandamus petition because *in camera* review of the individual documents represented "an avenue far short of mandamus to achieve precisely the relief" that the petitioners sought); *In re Remington Arms Co.*, 952 F.2d 1029, 1033 (8th Cir. 1991) (recognizing possibility that protective orders could limit the dissemination of trade secrets produced during litigation).

We recognize that the public disclosure of a pentobarbital supplier's identity may have detrimental consequences for a state. *See, e.g.*, *Zink v. Lombardi*, 783 F.3d 1089, 1113 (8th Cir. 2015) (en banc) ("[T]he practical effect of public disclosure would likely be frustration of the State's ability to carry out lawful sentences."). However, MDOC has failed to satisfy us that its entitlement to a writ of mandamus is "clear and indisputable" or that it has "no other adequate means" to attain the relief it desires. *See Cheney*, 542 U.S. at 380–81. Because MDOC has failed to satisfy either of the two prerequisites for obtaining a writ of mandamus, we deny MDOC's petition for a writ of mandamus seeking to prohibit the district court from enforcing its order regarding compliance with the inmates' discovery request. Because MDOC must comply with the order to produce the information in question, we deny as moot its petition to prohibit enforcement of the district court's order to produce a more detailed privilege log.

_____